411 A.2d 527

**COMMONWEALTH of Pennsylvania**

**v.**

**Marvin E. CHARLES, Jr., Appellant.**

Superior Court of Pennsylvania.

Argued March 20, 1979.

Filed Oct. 5, 1979.

Reargument Denied Jan. 9, 1980.

Peter T. Campana, Williamsport, for appellant.

Robert F. Banks, First Assistant District Attorney, Williamsport, for Commonwealth, appellee.

Before PRICE, SPAETH and LIPEZ, JJ.

LIPEZ, Judge:

Appellant was convicted of driving under the influence of alcohol.[1] At the trial, a state trooper testified for the Commonwealth, over objection, that appellant had refused to submit to blood and breathalyzer tests. We conclude that such evidence is inadmissible.[2]

Evidence of refusal to take such tests was admissible under section 624.1(h) of the now-repealed Vehicle Code of 1959 (1959 Code).[3] The 1959 Code also provided:

If any person is placed under arrest and charged with the operation of a motor vehicle or tractor while under the influence of intoxicating liquor and is thereafter requested to submit to a chemical test and refuses to do so, the test shall not be given but the secretary *may* suspend his license or permit to operate a motor vehicle . . . .

1. 75 Pa.C.S. § 3731.

2. When the trooper was called, defense counsel requested an offer of proof, which was then made. The court below overruled his objection to the offer. After he testified, defense counsel, raising additional grounds, again objected to the testimony and moved for a mistrial. The trial court denied the motion, and instead at that point instructed the jury to disregard the officer's testimony that appellant had refused to submit to a breathalyzer test.

We conclude that the trial court abused its discretion in failing to declare a mistrial. Since such evidence is inadmissible under the statute in question (the 1976 Code), as we shall demonstrate infra, a cautionary instruction is insufficient. The evidence was in the form of lengthy and detailed testimony given by a Commonwealth witness on direct examination. As such, it was "of such a nature [and] . . . delivered in such a manner that it may reasonably be said to have deprived the defendant of a fair and impartial trial." *Commonwealth v. Phillips*, 183 Pa.Super. 377, 382, 132 A.2d 733, 736 (1957), *quoted in Commonwealth v. Goosby*, 450 Pa. 609, 611, 301 A.2d 673, 674 (1973).

We also note that the trial court's instruction was inadequate, in any event, because the jury were told to ignore only the officer's testimony concerning appellant's refusal to submit to a breathalyzer test, and were not directed similarly to ignore evidence that appellant had also refused a blood test.

3. 75 P.S. § 624.1(h) (repealed) provided:

The refusal to submit to a chemical test may be admitted into evidence as a factor to be considered in determining innocence or guilt.

75 P.S. § 624.1(a) (repealed) (emphasis added). The 1959 Code thus left the suspension of the operator's license of a driver who refused to take such tests within the discretion of the Secretary of Transportation. The 1959 Code did not require that a driver be informed of the possible consequences of a refusal. The Vehicle Code of 1976 (1976 Code) [4] not only did not reenact section 624.1(h), but also makes mandatory the suspension or revocation for refusal to submit to intoxication tests.[5] The 1976 Code also requires the arresting officer to inform a driver suspected of intoxication that his license shall be suspended if he refuses to take the tests. 75 Pa.C.S. 1547(b)(2).

The effect of the concatenation of these changes has not been previously considered by any Pennsylvania appellate court. All prior cases on the admissibility of evidence of such a refusal dealt with the issue under the 1959 Code; the 1976 Code is so substantially different that these cases do not control our decision in this case.

We begin our analysis with the understanding that the Legislature acted intentionally in making the above combination of amendments. See 1 Pa.C.S. § 1921. The Statutory Construction Act of 1972 [6] provides:

Whenever a statute reenacts a former statute, the provisions common to both statutes shall date from their first adoption. Such provisions only of the former statute as are omitted from the reenactment shall be deemed abrogated, and only the new or changed provisions shall be

---

**4.** 75 Pa.C.S. §§ 101–8122.

**5.** 75 Pa.C.S. § 1547(b)(1). This subsection provides:
> If any person placed under arrest for driving under the influence of alcohol is requested to submit to a chemical test and refuses to do so, the test shall not be given but upon notice by the police officer, the department shall:
> (i) suspend the operating privilege of the person for a period of six months; or
> (ii) revoke the operating privilege of the person for a period of one year for a second or subsequent refusal within a period of three years.

**6.** 1 Pa.C.S. §§ 1501–1991.

deemed to be the law from the effective date of the reenactment.

While the failure to reenact, deemed abrogation of, section 624.1(h) of the 1959 Code may not by itself be sufficient foundation for a conclusion that the 1976 Code prohibits the introduction of evidence of refusal, we must consider this deletion in conjunction with the other changes. At the risk of repetition, the relevant provisions of the 1976 Code's implied consent section [7] may be summarized as follows:

1. There is a statutory right to refuse administration of chemical intoxication tests. *See* 75 Pa.C.S. § 1547(b)(1).

2. If such tests are refused, they may not be administered, but the operating privilege of a driver who refuses such tests shall be suspended or revoked for a certain period. *Id.*

3. The police officer who requests that such driver submit to chemical tests must inform the driver that operating privileges will be suspended or revoked if such tests are refused. 75 Pa.C.S. § 1547(b)(2).

The purpose of such provisions is to protect the public by providing an effective means of denying intoxicated drivers the use of public roads. *Commonwealth v. Ebert*, 31 Pa. Cmwlth. 82, 375 A.2d 837 (1977).[8]

■ The courts of our sister state of Washington have dealt with an identical group of legal requirements [9] in the following manner:

It is evident from these general principles that whichever choice defendant makes, the purpose of the implied consent law to remove an intoxicated driver from the

---

**7.** 75 Pa.C.S. § 1547.

**8.** *Ebert* was decided under the 1959 Code, but the stated purpose of the legislation continues and appears to have been strengthened in the 1976 Code by mandating, rather than merely allowing, the suspension or revocation.

**9.** *See* Wash.Rev.Code § 46.20.308. The requirement that a driver be informed of his right to refuse and that refusal will result in loss of driving privileges was established by authoritative construction of the statute. *Welch v. Dep't of Motor Vehicles*, 13 Wash.App. 591, 536 P.2d 172 (1975).

highway will be advanced. For if he consents to the test, scientific and probative evidence is available with which to establish his guilt. But if he refuses with informed knowledge of the consequence, his license to drive will be revoked.

However, use of his exercise of this statutory right as some sort of admission of guilt of the criminal offense is basically inconsistent with the type of informed choice contemplated by the statute. Furthermore, it would be unfair to have the defendant believe that his right to refuse the test would have one consequence and then to allow the State to assert an additional consequence.

In other words, had the statute intended evidentiary use of the right of refusal, it is logical that the arresting officer would be required to inform him that his refusal could be used as evidence in a criminal proceeding as well as the consequential loss of the privilege to drive. Since the statute does not require such warning, we conclude that the legislation did not contemplate the additional consequence.

*State v. Parker*, 16 Wash.App. 632, 558 P.2d 1361, 1363 (1976). The Supreme Court of Alaska based a similar holding upon the same reasoning:

Analysis of the two [relevant] statutes reveals that (1) drivers impliedly consent to a test designed to determine the alcohol content of their blood: and (2) refusal to submit to such a test will trigger sanctions.

These sanctions . . . are as follows:

(1) Revocation or suspension of license or privilege for a period of three months; or

(2) For persons convicted of [Operating a Motor Vehicle While Intoxicated (OMVI)] within two years of the present arrest, suspension of license or privilege for one year.

Before such a refusal can serve as the basis for these sanctions, the arrested person must be warned that a refusal will result in the suspension, revocation or denial of his license. The warning required to be given does not

advise the person that refusal will result . . . in an OMVI prosecution.

An intrinsic aid to statutory construction is found in the maxim *expressio unius est exclusio alterius.* The maxim establishes the inference that, where certain things are designated in a statute, "all omissions should be understood as exclusions." The maxim is one of longstanding application, and it is essentially an application of common sense and logic.

With respect to [the relevant statute] we find that the enumeration of certain sanctions, suspension or revocation of license, and the requirement that those sanctions be included in a warning preclude the imposition of additional consequences. The admissibility of evidence of the fact of refusal would constitute such an additional consequence.

We view the warning requirement as a protective device to assure an informed choice on the part of the motorist. It would be unfair to have the driver believe that refusal would have one consequence and then permit the state to assert an additional consequence.

*Puller v. Municipality of Anchorage,* 574 P.2d 1285 (Alaska 1978) (footnotes omitted).[10]

■ We agree with and adopt the above reasoning,[11] and hold, therefore, that the Legislature intended, by enacting the above provisions of the 1976 Code, to exclude from criminal proceedings evidence that a driver refused to submit to chemical tests to determine whether he was intoxicated.

**10.** The statutes involved are Alaska Stat. § 28.35.031 and 28.35.032.

**11.** Although this court held, in *Commonwealth v. Rutan,* 229 Pa.Super. 400, 323 A.2d 730 (1974), that evidence of a refusal was admissible in a criminal proceeding, that case interpreted the 1959 Code and has been rendered nugatory by the changes embodied in the 1976 Code. The *Rutan* court summarized its reasoning by saying, "the implied consent law contains no requirement that a person be told that he can refuse to submit to testing or that a refusal carries consequences, and we hesitate to read such a requirement into the law." 229 Pa.Super. at 402, 323 A.2d at 731. The 1976 Code has changed the premise upon which *Rutan* was decided.

The Commonwealth asserts, in the instant appeal, that the defense retroactively "opened the door" to the prosecution's evidence of refusal when defense counsel asked appellant, on direct examination, whether he recalled refusing to take the breath test, and appellant answered, "well, I do and I don't; I mean, I was just so confused and mixed up that I really don't know what I was doing and why I was doing it." *Commonwealth v. Stakley*, 243 Pa.Super. 426, 365 A.2d 1298 (1976), relied upon by the Commonwealth, does not support this position. This court held in that case that defense counsel had, on cross-examination, "opened the door" to the Commonwealth's *subsequent* elicitation of certain testimony (on redirect examination). "[I]f a witness for one party testifie[d] on a matter inadmissible if introduced by the other party, the other party can *subsequently* introduce evidence on that subject." *Commonwealth v. Stakley*, supra, 243 Pa.Super. at 436, 365 A.2d at 1303 (Hoffman, J., dissenting) (emphasis added); McCormick, *Evidence* §§ 32 and 57 (2d ed. 1972).

The above question and answer absent the improper evidence of refusal would have been sufficient to allow the Commonwealth to cross-examine appellant as well as introduce evidence concerning his refusal, but that is not the situation obtaining in the instant case. The previous introduction of the improper evidence by the Commonwealth had unfairly placed the defense in the difficult position of having to deal with it in its case. Such inadmissible evidence presented by the Commonwealth, over defense objection, cannot later be "ratified" by evidence presented by the defendant. The Commonwealth will not be permitted to use the error of the court below, which it has induced, to force appellant to waive his objection to the erroneous ruling. To do so would work a hardship upon the party which had protested the error and "would give an unfair advantage to the party inducing it. This ought not to be permitted unless imperatively required by rules of practice or of law." *Citizens' Gas Co. v. Whitney*, 232 Pa. 592, 81 A. 804 (1911); *see United States v. Konovsky*, 202 F.2d 721, 727 (7th Cir. 1953);

*Glennon v. The Great Atlantic & Pacific Tea Co.*, 87 R.I. 454, 143 A.2d 282 (1958). "One who objects and excepts to an erroneous ruling which permits his opponent to present improper evidence does not waive or lose his objection or exception, or his right to a new trial on account of it, by his subsequent introduction of the same class of evidence in support of his case." *Salt Lake City v. Smith*, 104 F. 457, 471 (8th Cir. 1900).[12]

Judgment of sentence vacated and new trial ordered.

PRICE, J., files a concurring opinion.

PRICE, Judge, concurring:

I concur in the reasoning and conclusion of the majority opinion. I wish only to add that my research into The

12. The reasoning supporting this principle was ably explicated by Judge Sanborn:

Nor did they waive this objection and exception by introducing in defense of the suit evidence of the same character as that to which they had objected, and which they had insisted was incompetent. They had presented their view of the question. They had objected to hearsay testimony, and had excepted to the ruling which admitted it. They had not invited the error of that ruling, but had protested against it. This was all that they could do. The plaintiffs had induced the court to commit the error, and were thereby prohibited from availing themselves of it in any court of review. Under this error they established their case by hearsay. Were counsel for the city required to refrain from meeting this proof by evidence of like character, under a penalty of a loss of their objection and exception? By no means. They had presented to the court and argued what they deemed to be the law. The court had held that they were mistaken. However firm they were in their conviction of the soundness of their position, the presumption was that they were in error; and it was the part of prudence and their duty to their client and the court to produce all the evidence which they could furnish in support of their demands, under the rule which the court announced, firmly but respectfully preserving their right to reverse the judgment if they failed to win their suit under the erroneous rule which the court had established. If they succeeded and obtained a verdict, the plaintiffs could not complain of the error which they had themselves invited, and the defendant's case would be won. If they failed, they would in this way preserve, as they had a right to do, the right of their client to the trial of its case according to the statute and the established rules of evidence, of which the erroneous ruling had deprived them.
104 F. at 470–71.

Vehicle Code of 1976 convinces me that the failure to provide for the admissibility of evidence of refusal to take such tests was purely an oversight. If such conclusion is correct the Legislature, not the Courts, must make such a correction. Since carnage on our highways continues and much of it is attributable to the drinking driver, it is my opinion that the removal of this valuable evidentiary tool deals law enforcement a heavy blow.