Erin Fern EGELMAN o.b.o. Matthew EGELMAN (Minor), Appellant,

v.

Eric EGELMAN, Appellee.

Superior Court of Pennsylvania.

Argued Nov. 19, 1998.

Filed March 17, 1999.

Nicole D. Galli, Philadelphia, for appellant.

Leslie E. John, Philadelphia, for Support Center for Child Advocates, Amicus Curiae.

Before McEWEN, President Judge, BROSKY and OLSZEWSKI, JJ.

OLSZEWSKI, J.:

¶ 1 Erin Egelman appeals from the order issued by the Hon. Thomas D. Watkins that dismissed her petition in abuse with prejudice, set forth procedures for future petitions in abuse, limited hearings regarding the welfare of the child to take place in the custody context only, and awarded counsel fees to the appellee. For the reasons set forth below, we reverse the order with respect to the procedures it sets forth for future petitions in abuse, the limitations on hearings regarding the welfare of the child, and the award of counsel fees to the appellee.

¶ 2 Erin Egelman and Eric Egelman were married in 1989 and had a son, Matthew, on November 18, 1992. Following their separation in 1993, custody proceedings began on February 2, 1993. A custody order went into effect on February 21, 1995. On October 2, 1995, Ms. Egelman filed a Protection from Abuse petition (PFA petition) on behalf of Matthew against his father in which she alleged abuse of Matthew while under the care and supervision of Mr. Egelman. After a hearing on the petition, the trial

court found the evidence supported a finding of abuse under the Act. A one-year final order was entered against Mr. Egelman on November 27, 1995, that restricted him to visiting Matthew in a supervised court nursery for a few hours every other weekend. Mr. Egelman appealed this order to our Court and on January 16, 1997, we affirmed the trial court's order. On December 2, 1996, after the year-long order expired, Ms. Egelman filed another PFA petition against Mr. Egelman on Matthew's behalf. This petition was dismissed on December 30, 1996, after a hearing on the merits.

¶ 3 The next PFA petition, which is the subject of this appeal, was filed on April 21, 1997, by Ms. Egelman on behalf of Matthew against Mr. Egelman. This petition alleged two occasions of abuse, one on March 2, 1997, and the other on March 29, 1997. At the hearing on April 28, 1997, Ms. Egelman testified that on March 26, 1997, Matthew told her that during his March 2, 1997, visit with his father, while at the New Jersey Aquarium, Mr. Egelman hit him with his fist on the right side of his head because he was playing with a toy. Ms. Egelman also testified that on the evening of March 29, 1997, Matthew told her that he had fallen and hit his head while visiting with his father earlier that day. She also testified that Matthew complained of a headache and exhibited a red mark on his forehead. The Monday following this visit, Ms. Egelman took Matthew to the doctor, who found no evidence of trauma. Ms. Elaine Joseph, Ms. Egelman's mother and Matthew's grandmother, testified that Matthew had also told her of these two incidents with his father. Mr. Egelman denied punching or otherwise physically disciplining Matthew on the March 2, 1997, visit to the aquarium. He also testified that on the March 29, 1997, visit Matthew had not fallen down and was never out of his father's sight. Moreover, Mr. Egelman testified that he had not noticed a red mark on Matthew's forehead when he picked him up for the visit or when he dropped him off, but that Matthew was wearing a baseball cap during this visit and refused to remove it. In addition to these alleged incidents, Ms. Egelman also testified that between March 29, 1997, and the filing of the PFA petition on April 21,

1997, Matthew received several phone calls from his father that allegedly upset him.

¶ 4 The trial court found that the evidence presented was not sufficient to support a finding of abuse. With respect to the first incident, the court held that "[w]ithout any corroborating testimony or medical evidence, the court is forced to find these allegations unfounded and the testimony of M[s]. Egelman and her mother not credible." Trial Court Rule 1925 Opinion, 5/28/98, at 8. Addressing the second incident, the court opined that there was no way to know what caused the mark on Matthew's head because of the conflicting testimony as to what caused the mark and when it occurred. Based on these findings, the trial court dismissed Ms. Egelman's PFA petition.

¶ 5 In addition to dismissing the PFA petition, the trial court found Ms. Egelman's petition frivolous and a misuse of the Protection from Abuse Act. As a result, the court ordered that a bond to cover the court costs must accompany any future PFA petitions filed by Ms. Egelman against Mr. Egelman. It was also ordered that "all further hearings concerning [the] welfare of child to be heard in custody context only." Trial Court Order, 4/28/97. Finally, pursuant to 42 Pa.C.S.A. § 2503, the trial court awarded attorney's fees to Mr. Egelman.

¶ 6 Appellant filed a petition for reconsideration on May 8, 1997, which was denied without a hearing. This timely appeal followed. Appellant presents the following questions for our review:

1. Does a court's conditioning of a person's right to file a petition for protection from abuse under the Protection From Abuse Act, 23 Pa.C.S.A. § 6101 *et seq.*, by requiring that (a) the petition "be accompanied by a bond to cover court costs" and that (b) "[a]ll further hearings concerning welfare of child to be heard in custody context only" violate the Protection from Abuse Act and the Pennsylvania and United States Constitutions?

2. May a court in a proceeding on a petition for protection from abuse filed under the Protection from Abuse Act, 23 Pa. C.S.A. § 6101 *et seq.*, require that the non-

prevailing plaintiff pay the prevailing respondent's attorney's fees and, if so, is the award of attorney's fees supported by the record below?

Appellant's brief at 4.[1]

¶ 7 Upon review of the record, we opine that the dismissal of appellant's April 21, 1997, PFA petition was appropriate because appellant did not present sufficient evidence to overcome her burden of proving abuse by a preponderance of the evidence. The dismissal of appellant's PFA petition, however, is not at issue in this appeal. In fashioning its order following its decision on the appellant's PFA petition, the trial court endeavored to create gatekeeping mechanisms to control the filing of abuse petitions under the Protection from Abuse Act. We find these mechanisms contrary to both the intent and provisions of the Act and to the case law interpreting the Act.

## I. The Bond Requirement

¶ 8 In its opinion, the trial court stated that it perceived a serious problem with the filing of frivolous abuse petitions and surmised that these petitions were being used to circumvent the custody docket. It also stated that the PFA Act was "devoid of any mechanism by which the courts can control, and indeed restrain, the flow of such frivolous petitions." Trial Court Rule 1925 Opinion, 5/28/98, at 10. Consequently, the trial court resolved that it would

fashion[ ] the following remedy: 1. After trial, if the court finds that the case was totally without merit and in effect a flagrant abuse of the court system, we simply order that before another Petition in Abuse can be filed by the same plaintiff, against the same defendant, a bond must be posted for court costs ... The court is merely providing some kind of pre-insurance that the petition will be filed for legitimate reasons, and not merely as a means of harassment, threat or other improper motivation.

Id. at 11. Finding that the instant petition was without merit, the trial court ordered appellant to post bond for court costs when filing any future PFA petitions against Mr. Egelman.

¶ 9 The authority of the trial court to impose a pre-condition on the filing of future PFA petitions is a question of law. "If a trial court erred in its application of the law, an appellate court will correct the error." *Bernhardt v. Needleman*, 705 A.2d 875, 876–77 (Pa.Super.1997). Our scope of review on questions of law is plenary. *Simmons v. Pacor, Inc.*, 543 Pa. 664, 674 A.2d 232 (1996).

¶ 10 The error of the trial court's reasoning is fundamental. A plain reading of the Act makes it clear that financial restrictions, such as requiring the posting of a bond prior to filing a petition, are not to be imposed. It is well-settled that a court must construe the words of a statute according to their plain meaning and to effectuate legislative intent. 1 Pa.C.S.A. §§ 1903(a), 1921(a); *Miller on Behalf of Walker v. Walker*, 445 Pa.Super. 537, 665 A.2d 1252, 1257 (1995); *Heard v. Heard*, 418 Pa.Super. 250, 614 A.2d 255, 258 (1992). We have reiterated the purpose of the PFA Act on numerous occasions, stating that

[t]here can be no question regarding the nature of the risk the legislature sought to meet in enacting the [PFA] ... We have described the Act as a "vanguard measure dealing with the problems of wife and child abuse." The legislature recognized that existing legal means were inadequate to address these problems. The primary goal of the Act was therefore not retroactive punishment, but rather "[a]dvance prevention of physical and sexual abuse." This purpose is manifest in the emergency provisions of the Act that enable a court to respond quickly and flexibly to advance warnings of abuse.

---

1. We note that appellee, Mr. Egelman, declined to file a brief. The following organizations: Support Center for Child Advocates, Juvenile Law Center, Pennsylvania Coalition Against Domestic Violence, Philadelphia Citizens for Children and Youth, Women in Transition, Women's Law Project, and Women Organized Against Rape jointly filed an amici curiae brief in support of appellant.

*Eichenlaub v. Eichenlaub*, 340 Pa.Super. 552, 490 A.2d 918 (1985) (citations omitted) (alteration in original).

¶ 11 Our legislature amended several provisions of the PFA Act in 1994. One amendment rewrote two provisions in the Act that directly addressed fees and costs of filing abuse petitions. The prior provisions required a petitioner to prepay filing fees.[2] The relevant provisions now provide:

> (b) No prepayment of fees. —The petition shall be filed and services shall be made without prepayment of fees.
>
> (c) Assessment of fees and costs. —If the plaintiff prevails in the action, fees and costs shall be assigned to the defendant, or, should the court determine that the defendant is not able to pay the costs of filing and service, the court shall waive fees and costs. If the plaintiff does not prevail, costs of filing and service may be assigned to the plaintiff or, should the court determine that the plaintiff is not able to pay the costs of filing and service, the court shall waive fees and costs.

23 Pa.C.S.A. § 6106(b)–(c). The plain meaning of these provisions is that a plaintiff is not required to prepay the costs of filing a petition. Requiring a plaintiff to post a bond to cover court costs prior to filing a PFA petition is commensurate to requiring a prepayment of the fees and costs. A simple comparison of the earlier version of the fee and cost provisions with the amended version reveals that the legislature clearly intended to remove such financial barriers to filing an order for protection. Moreover, the imposition of posting a bond prior to filing a PFA petition will frustrate the expeditious nature of the Act and the legislative intent to remove financial barriers to obtaining protection from abuse. Therefore, we hold that ordering Ms. Egelman to post a bond prior to filing future PFA petitions on behalf of her son against the father was in direct contravention of the Act, an attempt at judicial legislation, and an error of law.

## II. The Custody Context Only Requirement

¶ 12 The order dated April 28, 1997, provides that "[a]ll further hearings concerning the welfare of the child to be heard in a custody context only." Trial Court Order, 4/28/97. There is no mention of this restriction in the trial court's Rule 1925 opinion supporting its order. Without an explanation, we deduce from the language used that the trial court intended to prohibit Ms. Egelman from initiating any proceedings under the PFA Act. Notably, this contradicts the provision of the order requiring the posting of a bond prior to filing future PFA petitions. If Ms. Egelman is prevented from initiating proceedings under the PFA Act, then her only other remedies to protect her son from potential abuse are found under the Custody Act or the Child Protective Services Law. Neither of these statutes are substitutes for the emergency provisions of the PFA.

¶ 13 The Custody Act does not provide the immediate attention or protection that the PFA Act provides. Judge Tamilia provided an accurate description of the differences between the remedies available under each Act in *Valentine v. Wroten*, 397 Pa.Super. 526, 580 A.2d 757 (1990).[3] In *Valentine*, plaintiff obtained an *ex parte* protection from

---

2. Prior to the 1994 amendment, the Act provided as follows:

    (b) Affidavit of insufficient funds for fees. – If the plaintiff files an affidavit stating that plaintiff does not have funds available to pay the fees for filing service, the petition shall be filed and service shall be made without payment of fees, and leave of court to proceed in forma pauperis shall not be required.

    (c) Determination of indigency. – When the petition is filed without payment of fees, the court shall determine at the hearing on the petition whether the plaintiff is able to pay the costs of filing and service. If the plaintiff is unable to pay the costs of filing and service, the court may waive the payment of costs or, if the plaintiff prevails in the action, assign them to the defendant. This subsection and subsection (b) apply to courts of common pleas and hearing officers.
    23 Pa.C.S.A. § 6106(b)–(c) (amended 1994).

3. Although Judge Tamilia's opinion in *Valentine* is a dissent, we note that the majority in that case did not reach the merits because it quashed the appeal for untimeliness in filing. Judge Tamilia addressed the issues presented because of the "pressing necessity, in justice, to resolve the issues presented by th[e] case." *Valentine v. Wroten*, 397 Pa.Super. 526, 580 A.2d 757, 758 (1990) (Tamilia, J., dissenting).

abuse order "which enjoined appellee from physically striking, harassing, threatening, or using foul language toward appellant and her children and evicted him from appellant's residence." *Id.* at 759 (Tamilia, J., dissenting). The trial court denied appellant's request for temporary custody of the children and asserted that the proper avenue was to file a petition for an emergency custody order pursuant to the Custody Act. In discussing the difference between the two Acts, Judge Tamilia stated:

> if a basis for relief is established in the Act, notwithstanding availability of another proceeding, such relief should be forthcoming under the law. The rationale of the trial court that the relief [under the two acts] is equivalent does not stand up under careful scrutiny. Without denigrating in any way the effectiveness of the special relief provision of the custody rules, its implementation does not carry with it the rapidity, forcefulness and protection that a temporary order will carry under the Act. . . .
>
> Protection from abuse orders can bring into play police protection, while emergency custody orders do not; violation of a protection from abuse order brings into operation criminal contempt actions while emergency custody orders are enforced primarily through civil contempt and a protection from abuse temporary custody order may be issued pro se while emergency custody orders can not. The unusual nature of the indirect criminal contempt penalty for violation of a protective order . . . which provides for imprisonment up to six months or a fine not to exceed $1000, or both, and arrest upon probable cause, without a warrant, whether or not the violation is committed in the presence of the police officer, make it clearly superior to an emergency custody action to protect the wife and children when it is established danger exists. In addition, . . . a copy of the order may be issued to the police department in the appropriate jurisdiction to enforce the order or agreement, which shall then place it in a county registry of protection orders . . . Availability of counselled assistance is greater in protection from abuse actions as a matter of public policy and pro bono legal assistance, than in custody actions. Thus it is evident denial of consideration of a petition for temporary custody in a protection from abuse proceeding, because special relief is available in a custody proceeding, is improper as it ignores the special benefits the legislature intended to confer on the victims of domestic violence, not generally available in emergency custody cases.

*Id.* at 760–761 (Tamilia, J., dissenting).

¶ 14 Here, the trial court expressed concern that the PFA Act was being used to "short circuit the normally cumbersome and clogged custody and support docket." Trial Court Rule 1925 Opinion, 5/28/98, at 9. This issue was also addressed by Judge Tamilia in *Valentine,* wherein he stated that

> I would not intend this holding to shortcut custody proceedings or to substitute for the special relief provision of the custody rules. I believe the trial judges of Pennsylvania are fully capable of drawing the line between cases calling for protection and those which attempt to circumvent normal custody proceedings. To prevent [this problem], the trial court could direct, as part of the temporary order, that one or the other party must initiate a formal custody proceeding before a request is made to extend the temporary Order.

580 A.2d at 765 (Tamilia, J., dissenting). The differences in remedies and the restrictions on temporary custody orders under the PFA Act and the Custody Act make it clear that neither avenue should be cut off because both provide distinct remedies.

¶ 15 Similarly, the Child Protective Service Law (CPSL) and the PFA Act serve different purposes and are not substitute remedies. Although both afford protection to abused children, this Court has explained the crucial difference between the two statutes in *Miller on Behalf of Walker v. Walker,* 445 Pa.Super. 537, 665 A.2d 1252 (1995). In *Miller,* we explained that the CPSL provides procedures for the reporting and investigation of child abuse and establishes a system for the prevention of further abuse, which includes proceedings to have the child removed from the home and taken into protec-

tive custody. Under the CPSL, it is the county Children and Youth Services that performs the investigations and arranges for the removal of a child from the home. An abusive parent can be removed from the home only after a full hearing or if arrested by police.

¶ 16 On the other hand, the PFA Act authorizes a court to enter orders directing a defendant not to abuse an adult or minor. An abuse order can be obtained *ex parte* and immediately. The defendant can be excluded from the house and temporary custody of children can be awarded to a plaintiff. Also, violation of an abuse order is punishable by a fine or imprisonment.

¶ 17 More importantly, however, the level of abuse required in order to obtain intervention under the two statutes is significantly different. The PFA Act broadly defines abuse to allow a petitioner to get protection from abuse that may not rise to the level of abuse required for action under the CPSL. Moreover, the standard of proof under the PFA Act is lower than under the CPSL. As we stated in *Miller*:

> it is clear that the definition of abuse under the Protection from Abuse Act is broader than the definition of child abuse under the Child Protective Services Act. Under the Protection from Abuse Act, "bodily injury" caused "intentionally, knowingly, or recklessly" to a family or household member is included within the definition of abuse, as well as "serious bodily injury." 23 Pa.C.S.A. § 6102(a). As we have previously indicated, "family or household members" under the Protection from Abuse Act include "parents and children."
>
> The General Assembly's purpose in including a broader definition of abuse than found in the Child Protective Services Law is undoubtedly related to the purposes of the Protection from Abuse Act. The goal of the Protection from Abuse Act is to provide an immediate remedy to victims of domestic abuse, thereby seeking to prevent further incidents of abuse from occurring. Thus, for a remedy to be available under the Protection from Abuse Act, it is not necessary that the physical harm to

the child be as serious as that which is required for a child to be removed from his home and placed into protective custody. The goal of the Protection from Abuse Act is protection and prevention of further abuse by removing the perpetrator of the abuse from the household and/or from the victim for a period of time.

665 A.2d at 1258 (citations omitted).

■ ¶ 18 Thus, it is clear that ordering Ms. Egelman to bring future concerns about the welfare of her child in the custody context only will prevent her from having access to the remedies provided by the Protection from Abuse Act. As stated above, the remedies under the PFA Act are distinct from those under CPSL because if the alleged abuse does not rise to the level of serious bodily injury there is no recourse under the CPSL. Thus, if Ms. Egelman has to rely on the CPSL because she is ordered not to file any more PFA petitions, she may not be able to protect her child from abuse in the future. In conclusion, we hold that the order to hear future concerns about the welfare of the child in the custody context only was an error of law. Because we hold that the bond requirement violates the Protection from Abuse Act and the order to hear concerns about the welfare of the child in the custody context only is not a viable substitute for allowing recourse under the Protection from Abuse Act, we need not address appellant's constitutional arguments on these issues.

### III. Award of Attorney's Fees

¶ 19 Finally, the trial court opined that appellant's "frivolous" PFA petition warranted the awarding of attorney's fees to appellee. In awarding attorney's fees, the trial court relied on 42 Pa.C.S.A. § 2503, which provides that

> [t]he following participants shall be entitled to a reasonable counsel fee as part of the taxable cost of the matter . . .
>
> > (9) Any participant who is awarded counsel fees because the conduct of another party in commencing the matter or otherwise was arbitrary, vexatious or in bad faith.

42 Pa.C.S.A. § 2503(9). This statute is the general exception to the American Rule that attorney's fees are not a taxable cost of litigation. 42 Pa.C.S.A. § 1726(a)(1). The PFA Act, however, authorizes the award of attorney's fees, but only to plaintiffs. As previously stated, "[i]f a trial court erred in its application of the law, an appellate court will correct the error." *Bernhardt v. Needleman*, 705 A.2d 875, 876–77 (1997). Our scope of review on questions of law is plenary. *Simmons v. Pacor, Inc.*, 543 Pa. 664, 674 A.2d 232 (1996).

¶ 20 Section 6108(a)(8) of the PFA Act authorizes a court to direct a defendant to pay a prevailing plaintiff for "reasonable losses suffered as a result of the abuse" and "[i]n addition to out-of-pocket losses, the court may direct the defendant to pay reasonable attorney fees." 23 Pa.C.S.A. § 6108(a)(8). In *Krassnoski v. Rosey*, 454 Pa.Super. 78, 684 A.2d 635 (1996), we explained that

> [s]tatutory provisions such as section 6108(a)(8), which depart from the general "American Rule" that each party is responsible for his or her own attorney's fees, are generally enacted where the legislature wishes to encourage potential plaintiffs to seek vindication of important rights and to deter defendants from conduct violating those rights.... Viewed within the context of th[e] overall statutory scheme, the purpose of the legislature in including in the Protection from Abuse Act a provision permitting the awards of counsel fees becomes apparent: first, to encourage victims of domestic abuse, who are often financially dependent upon their abusers, to take advantage of the protections offered by the Act; and second, to include a financial disincentive among the Act's arsenal of weapons designed to deter abusers from further abusive conduct.

*Id.* at 637–38 (footnote and citations omitted).

¶ 21 Plainly, there is no provision under the PFA Act authorizing a court to award attorney's fees to a prevailing defendant. The only remedy a prevailing defendant is entitled to under the PFA Act is for a non-prevailing petitioner to pay the fees and costs of the petition. 23 Pa.C.S.A. § 6106(c).

We reiterate that a court must construe the words of a statute according to their plain meaning and to effectuate legislative intent. 1 Pa.C.S.A. §§ 1903(a), 1921(a); *Miller on Behalf of Walker v. Walker*, 445 Pa.Super. 537, 665 A.2d 1252, 1257 (1995). In this regard, we are mindful of the maxim of statutory construction "*expressio unius est exclusio alterius*." "The maxim establishes the inference that, where certain things are designated in a statute, all omissions should be understood as exclusions. The maxim is one of long-standing application, and it is essentially an application of common sense and logic." *Commonwealth v. Charles*, 270 Pa.Super. 280, 411 A.2d 527, 530 (1979); *see also Ken R. v. Arthur Z.*, 546 Pa. 49, 682 A.2d 1267 (1996) (holding that a specific statute addressing custody and visitation that does not include a provision allowing a sibling to seek a visitation order, necessarily precludes siblings from seeking such orders).

¶ 22 Applying this maxim, we opine that the specific inclusion under the PFA Act of an option for courts to award attorney's fees to a prevailing plaintiff and not a reciprocal provision for a prevailing defendant leads to the logical conclusion that the legislature did not intend prevailing defendants to receive an award of attorney's fees. Moreover, the omission is in keeping with the legislative intent of the PFA Act to encourage victims of abuse to seek protection under the Act. An award of attorney's fees to a prevailing defendant does not promote the purpose of the Act and may actually result in a victim not filing for fear that the evidence may not be enough to prevail and that the victim will be directed to pay attorney's fees. Furthermore, we are not in a position to add a reciprocal provision to the PFA Act to allow an award of attorney's fees to a prevailing defendant, for that is the domain of the legislature. Thus, we hold that the trial court erred in awarding attorney's fees to appellee because they are not provided for under the PFA Act.

¶ 23 Moreover, the trial court was not authorized to award attorney's fees to the appellee under 42 Pa.C.S.A. § 2503(9). Similar to the case at bar, the trial court in *Krassnoski, supra,* also relied upon the stat-

ute providing the general exception to the American Rule. We explained that the application of that statutory exception is appropriate where attorney's fees are not specifically authorized by statute, but that "[i]n actions such as this ... where counsel fees are statutorily authorized in order to promote the purposes of a particular legislative scheme, the trial court should not determine the appropriateness. of counsel fees under the general standards applicable in all litigation." *Krassnoski*, 684 A.2d at 639.

¶ 24  Our reasoning is consistent with the recent Supreme Court decision in *Phillips v. WCAB (Century Steel, Westinghouse, Atlantic Plant Maintenance, Sauers, Schneider & Minnotte)*, 554 Pa. 504, 721 A.2d 1091(1999). In *Phillips*, the Court addressed whether a prevailing employer could be awarded attorney's fees for a frivolous workers' compensation appeal pursuant to Pa.R.A.P. 2744.[4] Similar to this case, the Workers' Compensation Act specifically provides an award of attorney's fees for a prevailing employee, but not to a prevailing employer.  The majority held that "[b]ecause the clear intent of Section 440 of the Act is to protect claimants from the costs of litigation, but not to provide comparable protection for employers, we conclude that the Commonwealth Court was not authorized to award attorneys' fees to Atlantic" under Pa.R.A.P. 2744.  *Id.* at 1094.  It follows, therefore, that in this case the trial court was not authorized to award attorney's fees under 42 Pa.C.S.A. § 2503.[5]

¶ 25  For the foregoing reasons, we reverse and vacate the trial court's order requiring Ms. Egelman to post a bond prior to filing future petitions in abuse, limiting hearings regarding the welfare of the child to the custody context only, and awarding counsel fees to the appellee.  Jurisdiction relinquished.

¶ 26  Dissenting Statement by McEWEN, President Judge.

---

McEWEN, President Judge, dissenting:

¶ 1  While the author of the Opinion of the majority has, in usual fashion, proceeded to a careful analysis and persuasive expression, and while I hasten to concur in both Part I and Part II of that Opinion, I am obliged to dissent from the views expressed in Part III of the majority Opinion since I am of the view that the specific authorization extended to the trial court by Section 6108(a)(8) of the Protection From Abuse Act does not preclude application of the general statutory provision providing for an award of counsel fees under the circumstances set forth in Section 2503 of the Judicial Code, 42 Pa.C.S. § 2503.

---

4. This rule allows an appellate court to award attorney's fees "if it determines that an appeal is frivolous or taken solely for delay or that the conduct of the participant against whom costs are to be imposed is dilatory, obdurate or vexatious."  Pa.R.A.P. 2744.

5. In any event, after a review of the evidence presented and the past history of this case, we do not find this case appropriate for an award of attorney's fees under section 2503 even if it was applicable.