## Lucille SELTZER, Petitioner,

### v.

## DEPARTMENT OF EDUCATION and Professional Standards and Practices Commission, Respondent.

Commonwealth Court of Pennsylvania.

Argued June 6, 2001.
Decided Aug. 6, 2001.

Richard W. Rogers, Norristown, for petitioner.

Ann G. St. Ledger, Harrisburg, for respondent.

Before FRIEDMAN, Judge, FLAHERTY, Senior Judge and RODGERS, Senior Judge.

FLAHERTY, Judge.

Lucille Seltzer (Educator) appeals the order of the Professional Standards and Practices Commission (Commission) which revoked her teaching certificates. We affirm.

On July 1, 1993, Educator assumed the position of Pupil Services Coordinator for the Western Montgomery Center for Vocation and Technical Studies (Center). In January 1995, the Administrative Director of the Center rated Educator as unsatisfactory in the areas of personality, preparation and student reaction for the period of June 1994 to December 1994. Also in January 1995, the Office of Auditor Gener-

al's Bureau of School Audits (Auditor) conducted a regularly scheduled audit of the Center for years 1992–1993 and 1993–1994. During the course of the audit, the Auditor discovered discrepancies between student records maintained by the Center and records maintained by the local high schools, whose students attend the Center. Based on initial findings, the Auditor performed a more extensive investigation and issued a final report to the Department of Education (Department) on August 25, 1995. These initial findings also prompted the Center to conduct its own investigation of Educator.[1]

The Department filed a complaint against Educator on or about August 29, 1995. Following its own investigation, the Department filed a Notice of Charges (Charges) against Educator with the Commission. These Charges alleged that Educator's conduct was immoral, negligent, intemperate and incompetent, as defined by the Commission. *See* 22 Pa.Code § 237 defining terms set forth in Section 5 of the former Teacher Certification Law, Act of December 12, 1973, P.L. 397, *as amended, formerly* 24 P.S. § 12–1255, *renumbered* 24 P.S. § 2070.5.[2] The Charges also alleged unlawful use of a professional title and sexual harassment.

Under the then-existing Teacher Certification Law, the Department was required to follow a fairly extensive process. A disciplinary proceeding against a professional educator must be initiated by the filing of complaint with the Department.

24 P.S. § 2070.9(a). The relator can be any interested party who files a complaint within one year from the date of the occurrence of the alleged action or from the date of discovery. *Id.* The Department must then assemble any information relevant to the complaint and conduct a preliminary review of the allegation and record. *Id.* § 2070.9(e). If the Department believes that disciplinary action may be appropriate or that further investigation is necessary, then the Department must forward the record and recommendations to the Chief Counsel of the Department. *Id.* Counsel reviews whether the complaint alleges facts, which, if true, are sufficient to require discipline. *Id.* § 2070.9(f). If the facts are deemed sufficient, then the educator and relator are notified. *Id.* § 2070.9(f)(2).

The Department must then conduct a preliminary investigation to determine whether there is probable cause to believe that grounds for discipline exist. *Id.* If a finding of probable cause is made, the Department notifies the educator, relator, and transmits its preliminary findings to the local school board of the school the educator is or was last serving. *Id.* § 2070.9(f)(3).[3] The school board is required to investigate the complaint and determine whether the educator is to be subject to local disciplinary actions. *Id.* § 2070.11(a). This determination, together with the findings, summary of evidence and recommendations of the school board, is then reported to the Department. *Id.*

---

1. The results of the Auditor's and Center's investigations suggested that Educator, who was responsible for student record keeping, altered student grades and "manufactured" grades for students who had not received the requisite instruction. The Center's investigation also discovered other alleged improprieties related to school finances, professional certification and interpersonal relationships.

2. Section 5 was subsequently renumbered as 24 P.S. § 2070.5. The Act of December 20, 2000, P.L. 918 substantially amended the Law, now designated the "Professional Educator Discipline Act." The new amendments are not applicable to the present matter.

3. This remand is not required if the school board was the complaining party. *See* 24 P.S. § 2070.9(f)(3).

Upon receipt of this information, the Department may dismiss the charges, determine that sufficient punishment has been imposed by the school board *or initiate hearing procedures. Id.* § 2070.12.

■■■■ Educator contends that the Commission's decision to revoke her teaching certificate is flawed because the complaint was never remanded to the school board for investigation. We conclude that procedurally the Department erred. The record clearly states that the Department was the relator in this matter. Further, the law mandates that unless, the school board is the relator, the complaint must be remanded to the school board.

In *Gow v. Department of Education,* 763 A.2d 528 (Pa.Cmwlth.2000), an educator was the subject of improper conduct charges before a school district. These charges were not sustained and the educator was reinstated. *Id.* at 531. Thereafter, several interested parties filed a complaint with the Department. *Id.* The Department issued a Notice of Charges against the educator and sought to have him disciplined under the Teacher Certification Law. *Id.* On appeal, the educator argued that the Department was estopped from disciplining him on the same allegations of conduct that could not be sustained before the school district. *Id.* We rejected this argument because the matter before the *school district* was related to the educator's *employment. Id.* at 532. The subject of the *Department's* action, however, was the educator's teaching *certification. Id.* We also held that the Commission was the ultimate factfinder. *Id.* at 531 citing 24 P.S. § 2070.14. Therefore, the school district's findings are not binding on the Commission. Nor under Section 2070.12 is the Department required to accord any weight to the school district's conclusion not to proceed when determin-

ing whether it should proceed with certification action.

In the matter *sub judice,* Educator has not articulated how she was harmed by the Department's failure to comply with the statutory procedure. Neither party has suggested what the intention of the General Assembly may have been in setting forth the remand requirement. We contemplate that there may be several interpretations. First, the Legislature may have only intended the school board to be informed of the complaint and have the opportunity to discipline the Educator with respect to her employment. The second interpretation, which we find more persuasive, is that the school board was not only to be given notice of the complaint and an opportunity to investigate, but to also establish and build a record for use by the Department.

The Commission has defined the terms set forth in the Teacher Certification Law, which describe the conduct that may result in licensure discipline. *See* 22 Pa.Code §§ 237.1–.9. These definitions, however, are not applicable to the conduct set forth in Section 1122 of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, as amended, 24 P.S. § 11–1122. *See* 22 Pa. Code § 237.2(a). Section 1122 provides certain causes (*e.g.,* immorality, incompetence, intemperance, cruelty, persistent negligence) for termination of a teacher's contract. Although interpretation of these terms by school boards, the courts and the Secretary of Education under the School Code is not binding on the Commission under the Certification Law, decisions regarding the interpretation of the terms under the School Code will be regarded by the Commission as persuasive authority under the Certification Law. *Id.* § 237.1(c). Moreover, any conduct engaged in by Educator that is prohibited by the Public School Code of 1949 may be used as sup-

porting evidence in cases of certification suspensions and revocations. *Id.* §§ 235.5 and 235.6(b). We do not conclude that Educator was either harmed or prejudiced by the Department's failure to remand this complaint to the school board. On the contrary, this error was harmless since Educator was not exposed to additional school board actions under the Code, which actions the Department may have used against Educator in the licensure revocation proceedings.

■ Educator next contends that the Hearing Examiner denied her motion to dismiss without explanation or rationale. The merits of Educator's motion were that the allegations contained in the Notice of Charges were not from an interested party within one year of the date of occurrence. R.R. at 96a 97a. The Hearing Examiner, however, did consider this contention and concluded that the Department was an interested party and also filed a timely complaint.[4] *See* Proposed Decision and Order, R.R. at 1133a. Absent evidence that the Hearing Examiner simply did not rule on the motion or did not make findings regarding the merits of the motion, we do not subscribe to Educator's argument. As with our analysis, *supra*, the mere demonstration of a potential procedural error, without also alleging a resulting harm, is not sufficient reason to disturb an agency adjudication.[5]

■ Educator next argues that the facts found by the Hearing Officer and adopted by the Commission were not sufficiently specific, lacked credibility determinations and did not indicate which evidence was accepted or rejected. Educator filed exceptions with the Commission from the Hearing Officer's proposed decision and order. Following this filing, the Commission is required to consider the exceptions and file an opinion and order either affirming, reversing or modifying the hearing officer's decision. 24 P.S. § 2017.14. The Commission did so on June 27, 2000. The Commission issued a nine-page opinion that addressed Educator's exceptions and affirmed the Hearing Officer's conclusion.

■ Educator's suggestion that the lack of citation to the record for the 135 findings of facts renders the decision incapable of meaningful appellate review is without merit. Although Rule of Appellate Procedure 2132 requires citations to the record, we may waive egregious violations of the Rules, including citations to the record, when such omissions do not substantially interfere with our review of the appellate record. *See e.g., In re M.T.*, 414 Pa.Super. 372, 607 A.2d 271, 274–75 (1992). Moreover, the Commission explicitly stated that it reviewed the record and found the Hearing Officer's conclusions fully supported by the record. When the Commission adopted the Hearing Officer's proposed decision and order, it also adopted the findings, conclusions and discussion contained therein. The Commission was certainly free to modify the decision but it apparently found such action unnecessary. Accordingly, the Commission also adopted the Hearing Officer's credibility determinations to which he concluded, "Respondent was not as credible as those who testified concerning the various occur-

---

4. These issues are discussed *infra*.

5. This conclusion is harmonious with the Pennsylvania Supreme Court's interpretation of due process rights in driver license revocation and suspension proceedings. Although the factual basis and statutes are quite distinct, the Court has held that a lack of strict conformance to the procedural requirements will not violate due process rights unless the licensee can demonstrate that he was prejudiced by the non-conformance. *See Department of Transportation v. McCafferty*, 563 Pa. 146, 758 A.2d 1155 (2000).

rences that make up the record." R.R. at 1130a.

▪ Educator also contends that the Commission erred by classifying her as an administrator because although she had an administrator's certificate, she was not in the position of administrator. The effect of this designation is in the composition of the reviewing panel. Generally, review of exceptions from the Hearing Officer's report is considered by the full membership of the Commission. 24 P.S. § 2070.14(b). In the matter of discipline of an administrator, however, the Chairperson of the Commission will create a special panel of at least five members, which excludes teachers. *Id.*

Again, Educator merely points to a potential error but fails to state or even suggest how she was harmed. Educator's primary responsibilities included recruiting students, public relations and student recognition programs. R.R. 1120a. It is not argued that Educator's position required her to teach. Further, the conduct Educator was charged with (*e.g.*, manufacturing/altering grades, behavior toward staff and superiors, lack of certification, use of school accounts for personal business) does not imply that teachers, as opposed to administrators, would be more or less qualified, sympathetic or harsh on a review of the exceptions filed by Educator. Assuming that the administrator classification was error, it is not plain error nor is it argued by Educator to be reversible error. We conclude that any classification error in this matter was harmless.

▪ Educator argues that her manufacturing of grades was actually a curriculum deficiency and should be resolved under procedures set forth in the Academic Standards and Assessments Chapter of the Administrative Code. *See* 22 Pa.Code § 4.81. Educator's assertion is without merit because it mischaracterizes the scope and application of the Chapter. The curriculum requirements apply to school districts and area vocational-technical schools. *Id.* The "remand and correct" remedy available for a deficient curriculum is not available to an Educator who unilaterally manufactures grades. Such actions should be prosecuted under the Teacher Certification Law, which already has a remand procedure. As we have observed, *supra*, the failure to remand the complaint against Educator was harmless.[6]

▪ Moreover, Educator characterizes the Department's receipt of the Auditor's report as an adjudication by the Department under the Administrative Agency Law. 2 Pa.C.S. § 101. Educator asserts that the Auditor's recommendation in the report affected her personal and property rights. Consequently, she should have been given notice of the report when was it was shared with the Department. Educator's assertion, however, is contrary to our prior holdings. In *Northeastern Educational Intermediate Unit No. 19 v. Office of Auditor General*, 88 Pa.Cmwlth. 314, 489 A.2d 966, 967 (1985), we held that a mere recommendation is not an adjudication when the Auditor General has no independent authority to affect property rights. Further, the decision of the Department to use the findings of the audit report to initiate the complaint is not an adjudication because it lacks finality.

---

**6.** Educator also asserts that the Commission failed to find that certain policies respecting grades, programs and documentation are governed by regulation and, therefore there cannot be a conclusion that Educator violated such polices. In essence, Educator is arguing that if her conduct is not prohibited by a regulation, then it cannot violate standards of professional conduct.

■ Finally, Educator repeatedly asserts throughout this appeal that there were interested parties who were aware of her conduct for a period longer than one-year prior to the filing of the complaint. Educator concludes, therefore, that the Department is barred by this one-year quasi-statute of limitations. First, Educator contends that the Hearing Examiner failed to address whether the complaint is time-barred. The Hearing Examiner's Opinion, however, stated:

> Respondent also argues that the proper timetable was not followed in her case. Contrary to her beliefs The Department, an interested person, filed its complaint July 25, 1996 within one year of the date of discovery of the occurrence, to wit the August 25, 1995 audit report. Notice of the filing of the complaint was sent to Respondent August 5, 1996. The procedures followed by the Department were proper.

R.R. at 1133a.

■ Educator disputes whether the Department may be an "interested party" under the statute. *See* 24 P.S. § 2070.9(a). The Teacher Certification Law contains only one conditional prohibition on who may be an interested party:

> The commission, and its individual members, may not file a complaint or initiate a disciplinary proceeding on their own motion, except that if, in the performance of commission business, the commission, or any of its individual members, uncovers evidence that would appear to require discipline, the commission may transmit such evidence to the department where such evidence will be treated as a complaint in accordance with the provisions of this act.

Id. § 2070.9(d). One longstanding and intrinsic aid to statutory construction is found in the maxim *expressio unius est exclusio alterius* (*i.e.,* the expression of one is the exclusion of the other). This maxim establishes the inference that where certain things are specified in a law, all omissions should be understood as exclusions. *Finkelstein v. Commonwealth,* 61 Pa.Cmwlth. 91, 433 A.2d 146, 148 (1981); *Commonwealth v. Charles,* 270 Pa.Super. 280, 411 A.2d 527, 530 (1979). Applying this maxim to the Teacher Certification Law, the Department is not excluded from filing so, therefore, it is permitted to file a complaint.

Further, Educator argues that because other potentially interested persons may have known about the conduct *earlier,* this knowledge should be imputed to the actual interested party that filed the complaint (*i.e.,* the Department). It is contended, therefore, that the Department is barred from filing the complaint because the conduct occurred and was discovered more than one year before filing the complaint. Educator argues that the complaint states that the conduct was related to matters that occurred during the 1993–1994 school year, that a teacher and the former director of the school both knew about the grade manufacturing in May 1994, and that the county detective and District Attorney concluded their investigation on January 6, 1995 into the payment of advertisement expenses related to Educator's personal business paid from a school account.[7]

The Department contends that, as an interested person, it had one year from the date of occurrence *or* from the date of its discovery. 24 P.S. § 2070.9(a). The Department first received a copy of the audit report on August 25, 1995 and filed the

---

7. Law enforcement authorities concluded that billing the school for these services was the advertiser's fault and Educator reimbursed the school.

complaint on July 25, 1996. Thus, the complaint was filed within the one-year period following the date of discovery by the Department. The Department fails to provide any authority or legal analysis for its interpretation of the timeliness requirement for filing a compliant.

Section 2070.9(a) states, in relevant part:

A proceeding to discipline a professional educator shall be initiated by the filing of a complaint with the department by any interested party within one year from the date of the occurrence of any alleged action specified under section 5(a)(11), or from the date of *its* discovery.

*Id* (emphasis added).[8] There are competing interpretations of the pronoun "its" in the last phrase of Section 2070.9(a). Apparently, the Department interprets the pronoun to mean that any interested person has one year to file a complaint from the date of *the interested person's* discovery of the conduct (*i.e.*, "its" refers to the interested person).[9] The Department's interpretation would potentially obliterate any time limitation to filing a complaint. For example, there may be a perpetual stream of interested persons such as supervisors or Department personnel, which stream would provide endless opportunities to discover the conduct.

In contrast, Educator appears to interpret "its" in Section 2070.9(a) to mean that once any potentially interested person discovers the *conduct,* then a complaint must be filed within one year from that discovery or all potentially interested persons, such as the Department in the instant case, are then barred from filing (*i.e.*, "its" refers to the conduct). Under Educator's

interpretation, if her supervisor had knowledge or acquiesced to her actions, then Educator could rely on the supervisor's lack of subsequent action (*i.e.*, investigation and/or disciplinary action) as a shield against complaints filed by other interested persons after the one-year period. We believe that this interpretation must be refined or it will have unintended consequences upon application. Educator's approach is based on the assumption that the "notice of one is notice to all." The assumption, however, is flawed in so far as it presumes that a supervisor (*e.g.*, potentially interested person) will act in a professional and competent manner upon observing or experiencing the conduct. If an administrator learned about misconduct but failed to act, such inaction would vitiate future discovery and permit the educator to evade accountability merely because the administrator acted in an unprofessional manner. The Teacher Certification Law should be construed to avoid such an absurd result.

Prior conduct, however, cannot hang like the sword over Damocles' head for Educator's entire career. To do so would require us not to interpret the one-year limitation but rather completely disregard it. Nor is it reasonable to hold Educator responsible for her supervisor's failure to act in *all* circumstances. This would unfairly compel the Educator to actively pursue resolution of a matter whose outcome may very well result in disciplinary action against her. We do not believe the Teacher Certification Law requires the Educator to fall upon the sword.

Rather, we conclude in this licensure matter that vitiation of the discovery potential by any interested party is the responsibility of Educator. Educator must

---

8. We note that the structure of the sentence is such that the one-year limitation is applicable to both the date of occurrence and the date of discovery.

9. We make this conclusion based on the result of the Department's application of the statute.

affirmatively act to disclose the conduct to preclude the filing of a complaint under the discovery exception to the one-year time limit.[10] In contrast to a "notice *of* one is notice to all" approach, we believe that a "notice *to* one is notice to all" approach is a more reasonable interpretation. Whether the recipient of this information acts is the responsibility of the recipient.[11] We find no evidence that Educator affirmatively disclosed her conduct. In fact, the Auditor's report indicates that Educator initially denied manufacturing grades but later admitted to the act. The Department's complaint is not time-barred.[12]

Accordingly, we affirm the order of the Commission.

Senior Judge RODGERS concurs in the result only.

### ORDER

AND NOW, this 6th day of August, 2001 the order of the Professional Standards and Practices Commission revoking the teaching certificates of Lucille Seltzer is hereby affirmed.

10. Each party has interpreted this statute to arrive at a different outcome. We do not find the application of either interpretation to be reasonable, given the explicit one-year time limitation in the statute. Our construction preserves the time limitation but also recognizes the need to avoid an absurd or unintended outcome in applying this "affirmative disclosure" interpretation.

11. We do not specify in what position or status the "recipient" of the information must be to effect a disclosure. This question is not before us.

12. Educator urges this court to adopt the "discovery rule" an exception to actions barred by the Statute of Limitations. The "discovery rule" arises from the inability of the injured party, despite the exercise of rea-

sonable diligence, to know of the injury or its cause. *Pocono International Raceway, Inc. v. Pocono Produce, Inc.* 503 Pa. 80, 85, 468 A.2d 468, 471 (1983). We find this rule unworkable under the Teacher Certification Law. An "injured party" and "interested party" are two very distinct terms because there is no requirement that an "interested party" be able to show harm or injury under the Statute. Further, this rule would be difficult to apply. For example, the school district may have known about conduct after reasonable diligence but a parent cannot be held to the same standard regarding the same conduct. Under the "discovery rule" we could anticipate "shopping" for an interested party who could not have known about the conduct.