J-S35003-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| L.R.W., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| K.J.W., | |
| Appellant | No. 146 MDA 2018 |

Appeal from the Order Entered December 21, 2017
In the Court of Common Pleas of Lebanon County
Civil Division at No(s): 2013-20723

BEFORE:  BENDER, P.J.E., PANELLA, J., and MURRAY, J.

MEMORANDUM BY BENDER, P.J.E.:                **FILED AUGUST 03, 2018**

K.J.W. (Mother) appeals from the December 21, 2017 order denying her petition for special relief and granting L.R.W.'s (Father) petition for contempt in the context of this contentious custody matter involving the custody of the parties' child, J.W. (Child), born in August of 2003.  After review, we affirm.

In its opinion filed in response to Mother's Pa.R.A.P. 1925(b) statement of errors complained of on appeal, the court provided an extensive recitation of the factual and procedural history of this case, which began in November of 2013 following Mother's filing of a custody complaint.  Initially, the parties shared legal custody with Mother having primary physical custody.  After a hearing in July of 2014, the court ordered shared legal custody, but assigned primary physical custody to Father.  **See** Order, 7/28/14.  That order directed Father to make all primary decisions after consultation with Mother and for

the parties to engage in counseling. Mother appealed that decision to this Court, arguing that "the trial court erred in denying her motion to continue the custody hearing and by requiring her to participate in the custody trial without counsel." ***K.J.W. v. L.W.***, No. 1429 MDA 2014, unpublished memorandum at 1 (Pa. Super. filed April 8, 2015). This Court affirmed the trial court's July 28, 2014 order.

In September of 2015, Father filed a contempt petition, which resulted in a continuation of the July 28, 2014 order. Thereafter, Father filed a petition for emergency custody that resulted in the June 1, 2016 order that,

> grant[ed] emergency physical custody to Father pending [Mother's] acquisition of permanent housing. The June 1, 2016 Order suspended the July 28, 2014 Order while still providing that [Mother] have supervised partial custody and directing that [Mother] undergo an evaluation before reinstating unsupervised partial physical custody. On June 3, 2016, the parties filed a Stipulation to Amend Order of Court, which set forth conditions, including obligations of [Mother] to notify her counsel of changes in [her] housing situation, to allow Father to observe the premises where [Mother] was to exercise her partial physical custody periods, to provide separate sleeping accommodations for J.W., and reinforcing other conditions set forth in the June 1, 2016 [o]rder. [The trial court] issued an Order the same day vacating the June 1, 2016 Order and adopting the conditions of the June 3, 2016 Stipulation.

> On August 22, 2017, [Mother] filed her Petition for Special Relief alleging that Father had "engaged in a pattern of activity with regard to decision making concerning [J.W.] in a unilateral and arbitrary manner." [Mother] has specifically alleged that Father was making unilateral decisions regarding sports activities and doctor's appointments, which served to either encroach upon [Mother's] custodial periods or were prohibitive of her attendance. [Mother] further alleged that Father had failed to respond to [Mother's] numerous requests in regards to: finding academic help for J.W.; meeting with the counselor at the high school

- 2 -

regarding J.W.'s attendance the next year; obtaining counseling for [Mother] and J.W. through her provider; [providing] contact information for care-givers who are with J.W. in various capacities; and for participating [in] court-ordered communication counseling. [Mother] further alleges that Father was discouraging J.W. from meeting with [Mother] at random times other than that provided in the Custody Order and was "engaged in a course of conduct designed to estrange [Mother] from [J.W.]."

. . .

On September 8, 2017, Father filed a Petition for Contempt alleging that [Mother] had violated the Custody Order and the Stipulated Order in the following ways:

1. [Mother] had failed to provide a valid lease for subsequent addresses of residence as obligated in custody order;
2. [Mother] had failed to provide Father with a reasonable opportunity to observe the premises where [Mother] expects to exercise her periods of partial custody as had been ordered;
3. [Mother] has failed to provide separate sleeping accommodations for J.W. as was included in the custody order[.]

[Mother] filed a Response to Father's Petition on October 23, 2017.

On December 21, 2017, [the trial court] issued an Order denying [Mother's] Petition for Special Relief and granting Father's Petition for Contempt. [The court] found [Mother] in contempt for admitting to administering medication to J.W. that had not been prescribed for him and finding that [Mother] interfered with the educational decisions of [] Father and/or the school in regards to J.W. In so finding, [the court] imposed a $100 fine on [Mother] and ordered that [Mother] was not permitted to make any further requests for testing or other intervention unless recommended by the school or agreed to by the parties. Furthermore, [the court] ordered that [Mother's] overnight visitation rights were suspended until further order of court, limited [Mother's] other visitation periods and assessed counsel fees of $200.00 to be awarded to Father. [The court] also eliminated [Mother's] right to request

special relief finding that [Mother] had abused such principle by filing the petition.

Trial Court Opinion (TCO), 3/16/18, at 2-4 (citations to the record omitted).

Mother filed this appeal and a concise statement of errors complained of on appeal in response to the trial court's order requesting the statement. *See* Pa.R.A.P. 1925(b).[1] Mother now raises the following issues for our review:

1. Did the [c]ourt err in failing to vindicate [Mother's] right to attend medical appointments relating to the minor child, J.W., and essentially supporting [Father's] actions in requiring her removal from medical appointments; in manifesting clear prejudice against [M]other and in favor of Father; and in precluding Mother from making additional requests or seeking intervention with J.W.'s school in the future?

2. Did the [c]ourt err in eliminating Mother's right to seek special relief from the [c]ourt with regard to matters pertaining to her parental rights with regard to the minor child, J.W.?

Mother's brief at 5.

The scope and standard of review in custody matters is as follows:

> [T]he appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that has no competent evidence to support it. ... However, this broad scope of review does not vest in the reviewing court the duty or the privilege of making its own independent determination. ... Thus, an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support its factual

---

[1] Because this is a children's fast track appeal, Mother should have filed her concise statement at the same time she filed her notice of appeal as required by Pa.R.A.P. 1925(a)(2)(i). The trial court accepted Mother's late filing and we likewise will not penalize her for failing to comply with this rule of appellate procedure.

conclusions, but it may not interfere with those conclusions unless they are unreasonable in view of the trial court's factual findings; and thus, represent a gross abuse of discretion.

*R.M.G., Jr. v. F.M.G.*, 986 A.2d 1234, 1237 (Pa. Super. 2009) (quoting *Bovard v. Baker*, 775 A.2d 835, 838 (Pa. Super. 2001)). Moreover,

[O]n issues of credibility and weight of the evidence, we defer to the findings of the trial [court] who has had the opportunity to observe the proceedings and demeanor of the witnesses.

The parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.

*R.M.G., Jr., supra* at 1237 (internal citations omitted). The test is whether the evidence of record supports the trial court's conclusions. *Ketterer v. Seifert*, 902 A.2d 533, 539 (Pa. Super. 2006).

*A.V. v. S.T.*, 87 A.3d 818, 820 (Pa. Super. 2014).

Mother's first issue encompasses her assertions relating to her right to attend Child's medical appointments and to prohibit her from intervening with Child's schooling. Most of her argument relating to her first issue centers on one particular medical appointment and her attempt to schedule a dental appointment. Essentially, Mother alleges that the trial court "should have addressed Mother's concerns with regard to attendance and involvement in medical and dental decisions on behalf of her son, and the [c]ourt … failed

completely in that regard." Mother's brief at 14-15. She provides no discussion relating to her intervention in Child's schooling.

In response, Father points out that the July 28, 2014 order directed that all primary decisions were left to Father to determine after he consulted with Mother. Father also cites the notes of testimony from the December 21, 2017 hearing, which reveal that Mother's testimony does not support her argument presented to this Court. Specifically, she testified to her reasons for leaving the examination room of her own accord, not that she was required to leave. Father also cites the testimony at the same hearing relating to Mother's contacts with Child's school in which she requested additional testing. This was done without informing Father, who learned of Mother's involvement from a letter he received from the assistant principal of Child's school.

The essence of Mother's argument appears to be an attempt to have this Court re-find facts and re-weigh the evidence and thus conclude that the trial court abused its discretion in denying her petition for special relief. However, our standard of review requires that we "accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations." **C.R.F., III v. S.E.F.**, 45 A.3d 441, 443 (Pa. Super. 2012). Moreover, "with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand." **Id.** Our review of the record reveals that the court's findings and resulting conclusions are

supported by the record. Therefore, Mother is not entitled to relief based upon the errors she alleges in her first issue.

Mother's second issue relates to the trial court's prohibiting Mother from seeking special relief in the future in connection with the custody of Child. In her brief, Mother again lists the various problems she had relating to her and Father's sharing of custody. Specifically, she names Father's refusal to allow her to attend Child's doctor appointments, Father's interference with her trying to have tutoring and homework assistance for Child, and Father's refusal to provide contact information for Child's caregivers when Child was away from home.

To support her argument, Mother relies on Rule 1915.13, which states:

> At any time after commencement of the action, the court may on application or its own motion grant appropriate interim or special relief. The relief may include, but is not limited to, the award of temporary legal or physical custody; the issuance of appropriate process directing that a child or a party or person having physical custody of a child be brought before the court; and a direction that a person post security to appear with the child when directed by the court or to comply with any order of the court.

Pa.R.C.P. 1915.13. In particular, Mother cites **Choplosky v. Choplosky**, 584 A.2d 340, 343 (Pa. Super. 1990), arguing that pursuant to Rule 1915.13 a temporary modification of custody would preserve the well-being of children while more permanent questions about custody can be resolved at a later date. Additionally, in an attempt to show that the court was hostile to her, Mother quotes language from the July 28, 2014 order, which states:

> As it pertains to shared legal custody, in light of the conduct this jurist has determined from today's hearing with respect to the lack of cooperation exhibited by Mother, all primary decisions shall rest in the hands of Father after consultation with Mother. In the event that Mother disagrees with Father's determination, she has the right to bring said matters before the [c]ourt on a Petition for Special Relief, but all reasonable decisions, including medical care and treatment, as well as education decisions are best left with Father.

Mother's brief at 15-16 (quoting Order, 7/28/14, at ¶ 3). Mother also quotes part of a statement made by the court to support its finding of Mother in contempt. Specifically, the court stated:

> Your obsessive-compulsive nature of wanting to know where [Child] is at all times, I understand, but when you manifest it by making demands on his Father and/or other people who care for this child to cause them to almost shut down because you are excessive in your demands raises serious questions about your mental stability.

Mother's brief at 17 (quoting N.T., 12/21/17, at 152).

Mother also relies on the case of *Egelman ex rel Egelman v. Egelman*, 728 A.2d 360 (Pa. Super. 1999), which she claims is "somewhat analogous" to the present matter. In *Egelman*, this Court held that requiring the mother of an allegedly abused child to post bond prior to the filing of future protection from abuse (PFA) petitions on the child's behalf was in contravention of the Protection from Abuse Act, 23 Pa.C.S. § 6101 *et seq.*, and could not be limited in this manner. Therefore, that portion of the order on appeal was reversed. Likewise, Mother suggests that as in *Egelman*, where the mother could not be limited in the filing of a PFA petition, she cannot be denied the right to file a petition for special relief.

Lastly, Mother asserts that the court focused on her past behavior and overlooked her testimony about her completion of an inpatient drug and alcohol treatment program and that she is attending classes at Harrisburg Area Community College. In support of this allegation, Mother relies on *Wiseman v. Wall*, 718 A.2d 844, 847 (Pa. Super. 1998), for the proposition that "a parent's ability to care for a child must be determined as of the time of the custody hearing, not as of an earlier time."

In response, Father first points to the numerous docket entries that extend for 25 pages, which are comprised of entries from October 2013 to the present. Father also quotes the trial court's opinion, dated March 16, 2018, that states:

> [T]he custody order does not require [Father] to provide names, addresses, and contact information regarding caregivers. In particular the Court is concerned that [Mother's] almost obsessive-compulsive desire to know the whereabouts of her son at all times and her past criminal conduct of harassment and/or interference with a number of people causes the Court concern and it will be addressed in my resolution of the special relief.

Father's brief at 8 (quoting TCO at 8). Father further quotes the trial court's statement from the December 2017 hearing, wherein the court indicated that it was "cognizant of the fact that [Mother] has numerous criminal charges of harassment, not just to Father, [but] to a school official and also has, I believe, a summary offense concerning her older daughter, and based on my observation of her demeanor even today is difficult at times to deal with."

Father's brief at 8-9 (quoting N.T., 12/21/17, at 147). Lastly, Father relies on

the following statement in the trial court's opinion:

> We contend that this court may properly rely upon its own recollection of the testimony and evidence present on the record in this matter in consideration of issues relating to custody and the petition for special relief, especially when such testimony and evidence were offered during a previous custody hearing.

Father's brief at 9 (quoting TCO at 9).

Although Mother's reliance on the **Egelman** case is logical, we are not

persuaded that it controls the outcome here. A petition filed under the PFA

Act provides for emergency relief, while the Custody Act does not. Here, the

situation does not compel an emergency action by the court and, therefore,

the desired types of relief sought by Mother can be gained through a petition

for the modification of custody. Moreover, the **Wiseman** analysis, relied upon

by Mother, is obsolete. **See P.J.P. v. M.M.**, No. 1586 MDA 2017 (Pa. Super.

filed April 27, 2018). Mother's contention that the court should have based

its decision on her actions at the time of the hearing and not what occurred in

the past, is no longer viable; rather, the section 5328(a) factors are what

controls. Accordingly, we conclude that Mother's second issue does not

present a basis upon which she can garner relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 08/03/2018