**COMMONWEALTH of Pennsylvania,**
**Appellee,**

v.

**Douglas D. LEIGHTY, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 18, 1996.

Filed May 7, 1997.

Dante G. Bertani, Public Defender, Greensburg, for appellant.

James R. Hopson, Assistant District Attorney, Greensburg, for Commonwealth, appellee.

Before DEL SOLE, POPOVICH and HESTER, JJ.

POPOVICH, Judge:

This is an appeal from the judgment of sentence entered in the Court of Common Pleas of Westmoreland County, following appellant's conviction for driving under the influence of alcohol, 75 Pa.C.S.A. § 3731(a)(1). Upon review, we reverse and remand for a new trial.

Herein, appellant questions:

I. Was there sufficient evidence to convict appellant of driving under the influence of alcohol to a degree which rendered him incapable of safe driving?

II. Did the police officer have probable cause to stop appellant's vehicle?

III. Was the introduction of evidence of appellant's blood alcohol content of 0.17 % which was later ruled inadmissible so prejudicial as to deny appellant a fair trial?

IV. Did the lower court err when it instructed the jury that the questions of guilt and penalty are decided separately by the jury and judge respectively and when it refused to advise the jury of the mandatory penalty upon conviction?

After careful consideration, we find that there was sufficient evidence to support appellant's driving under the influence conviction, and there was probable cause for the police appellant is entitled to a new trial since the inadmissible evidence of his blood alcohol content by weight of 0.17% was unduly prejudicial, especially when we consider that the evidence of his inability to drive safely, while sufficient to sustain his conviction, was not overwhelming. Having awarded a new trial to appellant, we need not address appellant's challenge to the jury instruction.

"In reviewing the sufficiency of the evidence, we must determine whether the evidence, and all the reasonable inferences deducible therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to establish all the elements of the offense(s) beyond a reasonable doubt." *Commonwealth v. Abdul–Salaam,* 544 Pa. 514, 521, 678 A.2d 342, 345

(1996), *quoting, Commonwealth v. Hughes,* 536 Pa. 355, 361, 639 A.2d 763, 766 (1994).

"When we review the rulings of a suppression court that are in favor of the Commonwealth, we must determine whether the record supports the court's factual findings. In so doing, we consider only the evidence of the prosecution and so much of the evidence for the defense as, when fairly read in the context of the record as a whole, remains uncontradicted. Assuming that the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error." *Abdul–Salaam,* 678 A.2d at 347, *citing, Hughes,* 639 A.2d at 769.[1]

When we apply the foregoing standards, our review of the record reveals the following facts. On November 29, 1994, Officer Donald Cramer was on routine patrol near the intersection of Route 30 and Fairwood Drive in the Borough of Irwin, Westmoreland County. At approximately 12:25 a.m., Officer Cramer, while approaching the red light at the intersection, heard a loud crash which he believed was a motor vehicle colliding with something. Seconds later, appellant's vehicle appeared from behind a building which obscured the officer's vision. Appellant approached the intersection from the same direction which Officer Cramer believed the sound of the crash came. At the time of the crash and for some time thereafter, Officer Cramer did not see any other vehicles in the vicinity. N.T., p. 38

When appellant's vehicle came to a stop at the light, Officer Cramer crossed the highway and stopped in front of appellant's car, blocking his vehicle so "it wasn't able to pull out." N.T., p. 38. When he exited his patrol car, Officer Cramer noticed damage to the right front fender and bumper area of appellant's vehicle. Officer Cramer then asked appellant whether he had hit anything, and appellant responded that he had gone up on the curb and struck the guide-rail behind the building. When talking with appellant, Officer Cramer noticed that appellant's eyes were red and glassy and his breath smelled of alcohol. N.T., p. 40.

After confirming that the guide-rail had been hit, Officer Cramer asked appellant to exit the vehicle and perform three field sobriety tests: heel-to-toe walk, finger tip-to-tip of nose touch and one-leg stand. While following appellant to the Dunkin' Donuts parking lot where he would administer the tests, Officer Cramer noticed appellant had a slight stagger to his walk. N.T., p. 43. Officer Cramer testified that appellant was not able to walk heel-to-toe while counting out loud. Appellant lost his balance and his count. Appellant was able to touch his finger to his nose, although with "some difficulty", and he was unable to stand on one foot and count aloud, again, losing his balance and his count. N.T., pp. 43–44. Convinced that appellant was incapable of safe driving, Officer Cramer arrested appellant for driving under the influence of alcohol. Appellant then agreed to submit to a blood test which revealed his blood alcohol level to be .17 %.

At trial, appellant objected to the admission of his blood test on the grounds that the Commonwealth had not laid a proper foundation for its admission. For example, the Commonwealth did not offer any evidence as to the identity or qualifications of the person who collected appellant's blood sample, the method of its collection, the certification of the facility under the Clinical Laboratories

---

1. Presently, we note that a suppression hearing was not held. Rather, the suppression issue was raised immediately prior to trial, and the court's decision on the motion was based entirely upon argument of counsel, i.e., no evidentiary hearing was held on the suppression motion. The lower court denied the motion stating:

... but what I am saying right now is that the Officer under these circumstances, from what you've indicated, and that appears to be what the offer of proof would be as to his testimony, that represents an investigatory stop. I think he's well within his province to make that investigatory stop. Now, he has to come up with more, and we'll see, it remains to be seen, as to whether or not he has sufficient evidence to proceed, but he does have certainly the right to investigate, based upon this.

N.T., p. 14.

Appellant has not objected to the lack of suppression hearing, and, consequently, we will base our adjudication of appellant's suppression claim upon the record as a whole.

Act and certification of the testing equipment.

The Court initially overruled the objection and permitted the jury to hear of appellant's .17% blood alcohol level. However, the court later reversed its decision and, consequently, granted appellant's motion for judgments of acquittal as to Counts 2 and 3 of the indictment, 75 Pa.C.S.A. § 3731(a)(4) and (5), which require proof of appellant's blood alcohol level. Thus, the jury deliberated and convicted appellant upon Count 1 only, wherein he was charged with driving under the influence of alcohol to a degree which rendered him incapable of safe driving. 75 Pa.C.S.A. § 3731(a)(1).

■ We now address appellant's claim that the evidence was insufficient to sustain his conviction for driving under the influence of alcohol which rendered him incapable of safe driving. 75 Pa.C.S.A. § 3731(a)(1). Appellant argues that there was no evidence to establish that he was incapable of safe driving, noting that the arresting officer only heard a noise and did not actually witness an accident. He cites *Commonwealth v. Rosko*, 353 Pa.Super. 307, 509 A.2d 1289 (1986), for the proposition that evidence that he consumed alcohol without more is insufficient to demonstrate that he had been rendered incapable of safe driving. However, we find that the evidence which was lacking in *Rosko, supra*, is herein present.

Officer Cramer heard a loud crash which he believed to be a vehicle collision, and he saw appellant's vehicle coming from the direction of sound at a time when no other vehicles were nearby. Appellant's car was damaged on the right front fender and bumper, and when asked, appellant admitted to striking the guide-rail with his car. Appellant's eyes were red and glassy and his breath smelled of alcohol. Also, appellant staggered when he walked away from his vehicle. Significantly, appellant failed two of the three field sobriety tests which Officer Cramer administered, and he passed the finger-to-nose test only with "some difficulty." Finally, appellant and his two defense witnesses all testified that appellant had drunk two Jack Daniels Bourbon and "cokes" earlier that evening.

In sum, we find that there was sufficient evidence to sustain appellant's conviction for driving under the influence of alcohol to a degree which rendered him incapable of safe driving. Appellant admitted to consuming liquor. His eyes were red and glassy. His breath smelled of alcohol. He failed two of three field sobriety tests. And, he was involved in a vehicle accident, albeit minor, only minutes before his arrest. *Cf., Commonwealth v. Rishel*, 441 Pa.Super. 584, 658 A.2d 352 (1995) (evidence sufficient to sustain conviction under § 3731(a)(1), where defendant smelled of alcohol, appeared confused, was involved in an automobile accident, failed two field sobriety tests and admitted to consuming two 16–ounce beers) vacated on other grounds, 546 Pa. 48, 682 A.2d 1267 (1996); *Commonwealth v. Feathers*, 442 Pa.Super. 490, 660 A.2d 90 (1995), affirmed, 546 Pa. 139, 683 A.2d 289 (1996) (evidence was sufficient to sustain conviction under § 3731(a)(1), where defendant had glassy eyes and slurred speech, staggered as she walked, smelled of alcohol and failed field sobriety tests, notwithstanding absence of evidence of erratic or unsafe driving).

Next, we will address appellant's contention that Officer Cramer did not have "probable cause" to stop his vehicle, and, consequently, the lower court erred when it refused to suppress all the evidence seized as a result of the stop.

In *Commonwealth v. Whitmyer*, 542 Pa. 545, 551, 668 A.2d 1113, 1117 (1995), our Supreme Court noted that, "The legislature has vested police officers with the authority to stop vehicles whenever they have 'articulable and reasonable grounds to suspect a violation' of the Vehicle Code. 75 Pa.C.S. § 6308(b)." Our high court then applied that standard in assessing whether the police officer had a "justifiable basis for stopping" Whitmyer. In so doing, the court explained that the difference between the standard police must employ when stopping a vehicle for a violation of the Vehicle Code as announced in *Commonwealth v. Murray*, 460 Pa. 53, 58–

59, 331 A.2d 414, 416–17 (1975), *citing Commonwealth v. Swanger,* 453 Pa. 107, 115, 307 A.2d 875, 879 (1973), i.e., "probable cause to believe that the vehicle or the driver was in violation", and the standard set forth by the legislature in 75 Pa.C.S.A. § 6308(a), i.e., "articulable and reasonable grounds to suspect a violation", is purely semantic and a "distinction without a difference". *Whitmyer,* 668 A.2d at 1116; *see also, Commonwealth v. McElroy,* 428 Pa.Super. 69, 75, 630 A.2d 35, 39 (1993) (*En Banc* ) (*Murray* standard and 75 Pa.C.S.A. § 6308 standard are interchangeable, but "articulable and reasonable grounds to suspect" is the *"preferred"* standard so as to avoid any confusion which may be caused by using the term "probable cause" to describe police encounters with citizens which *do not rise to the level of an arrest or a search*), *allocatur denied,* 543 Pa. 729, 673 A.2d 335 (1996).

■ Thus, we must determine whether Officer Cramer had articulable and reasonable grounds to believe appellant had violated the Vehicle Code at the time he stopped his police cruiser in front of appellant's vehicle in manner which prevented appellant from leaving. Appellant submits that Officer Cramer could not articulate any facts which associated him or his vehicle with any possible Vehicle Code violation because he only heard a loud sound and did not actually see appellant or his car violate the Vehicle Code.

However, upon review of the record, we conclude that Officer Cramer had articulable and reasonable grounds to suspect appellant had violated the Vehicle Code at the time he was stopped. At approximately 12:25 a.m., Officer Cramer heard a loud crash which he believed was an automobile striking something. Although the site from where the sound originated was obscured from Officer Cramer's view by a Dunkin' Donuts building, appellant's vehicle appeared from behind the building only seconds after the crash. And appellant's car was the only one in the vicinity at the time. We find it was entirely

reasonable for Officer Cramer to suspect that appellant had struck something with his vehicle and failed to stop in violation of 75 Pa. C.S.A. § 3745, Accidents involving damage to unattended vehicle or property.

Appellant argues that since Officer Cramer did not actually witness appellant's car strike the guide-rail, he did not have articulable and reasonable grounds to suspect a violation. In other words, since he did not directly witness appellant violate the Vehicle Code before he blocked appellant's further movement, the stop was unreasonable, and all evidence seized therefrom must be suppressed. *See, Whitmyer,* 668 A.2d at 1117, *quoting, Swanger,* 307 A.2d at 878.

While we believe this is a close case, we are nevertheless persuaded that the facts known to Officer Cramer at the time he effectuated the stop were sufficient to warrant the stop. To understand our conclusion, a review of *Whitmyer, supra,* is required. Therein, our high court determined that suppression was proper because at the time of the traffic stop, Trooper Kambic did not have articulable and reasonable grounds to suspect that Whitmyer had committed the crime of driving at an unsafe speed, 75 Pa.C.S.A. § 3361. Using his speedometer for a distance of two-tenths of a mile, the trooper estimated Whitmyer's speed to be seventy (70) miles per hour. Trooper Kambic then stopped appellant in order to cite him for driving at an unsafe speed. When he approached Whitmyer's car and began talking to Whitmyer, the trooper detected a strong odor of marijuana. Subsequently, Whitmyer was charged with driving under the influence of marijuana, possession of marijuana, possession of drug paraphernalia and driving at an unsafe speed.

Based on those facts, our Supreme Court concluded that the traffic stop was illegal because there was no outward sign that appellant was driving at an unsafe speed. In other words, since Trooper Kambic had observed Whitmyer travel at 70 miles per hour for a distance of *only* two tenths of a mile, instead of the three-tenths of a mile as required by statute,[2] he did not possess specific reasons to suspect Whitmyer was driving at an unsafe speed. *Whitmyer,* 668 A.2d at

2. See, 75 Pa.C.S.A. § 3368(a).

1117–1118. Moreover, a traffic stop of Whitmyer's vehicle could not lead to the discovery of evidence which would prove Whitmyer was driving at an unsafe speed. As our Supreme Court stated:

> ... We note that *this is not a case where further investigation would lead to a discovery of a violation of the Vehicle Code.* If the trooper was unable to clock [Whitmyer] for three-tenths of a mile or observe the conditions that would warrant a citation for driving at an unsafe speed, there is no further evidence that could be obtained from a subsequent stop and investigation.

*Whitmyer*, 668 A.2d at 1118 (Emphasis added).

The facts before us present the very type of situation anticipated by our high court where further investigation via a brief traffic stop could reveal evidence which would confirm (or refute) a violation of the code. By pulling his car in front of appellant, Officer Cramer, with minimal intrusion upon appellant's privacy rights, was able to move close enough to view the damage to the right front fender and bumper of appellant's car, despite the reduced visibility of night. That damage, when considered in conjunction with the loud crash, appellant's proximity to the crash and the dearth of other vehicles in the area, certainly was sufficient to permit Officer Cramer to approach appellant and question him concerning the possible hit-and-run. *Cf., Commonwealth v. Monaghan*, 295 Pa.Super. 450, 441 A.2d 1318 (1982) (investigatory stop of tow-truck permitted where officer was told that a tow-truck had struck a vehicle and officer saw damaged vehicle).

■ Finally, we must determine whether the introduction of evidence of appellant's blood alcohol content of 0.17 % which was later ruled inadmissible was so prejudicial as to deny appellant a fair trial. Upon review, we find that appellant was impermissibly prejudiced by the admission of his blood alcohol level in this case, and we remand for a new trial on the charge of driving under the influence of alcohol to a degree which rendered appellant incapable of safe driving.

Presently, the Commonwealth does not dispute that the evidence of appellant's blood test was erroneously admitted by the trial court. During the trial, the lower court determined that the blood test results were inadmissible and granted judgments of acquittal on Counts 2 and 3 of the indictment. The court also instructed the jurors that they may not consider appellant's blood alcohol content in determining whether appellant was driving under the influence of alcohol to such a degree as to render him incapable of safe driving.

■ Under appropriate circumstances, cautionary instructions will be sufficient to dispel any taint arising from irrelevant and inadmissible evidence. *Commonwealth v. Miller*, 333 Pa.Super. 58, 481 A.2d 1221 (1984). In determining whether an instruction to a jury can cure exposure to improperly admitted evidence, we will consider all the circumstances surrounding the case. *Commonwealth v. Vazquez*, 421 Pa.Super. 184, 617 A.2d 786 (1992).

■ Ordinarily, evidence of a defendant's blood alcohol content is relevant and admissible in a prosecution for driving under the influence to such a degree as to render the driver incapable of safe driving. *Commonwealth v. Kelley*, 438 Pa.Super. 289, 652 A.2d 378 (1994). Consequently, when the jury originally heard the evidence of appellant's .17 % blood alcohol content, it certainly weighed that evidence against appellant. Notwithstanding the fact that the jury was instructed to disregard the evidence of the blood alcohol content, we are convinced that the admission of the evidence was prejudicial error. *Cf., Commonwealth v. Charles*, 270 Pa.Super. 280, 411 A.2d 527 (1979) (in DUI prosecution, it was prejudicial error for police officer to testify that defendant refused to submit to a breathalyzer, notwithstanding trial court's instruction to disregard that evidence).

The Commonwealth argues that the improperly admitted evidence should be treated as harmless error because "the evidence of guilt, without regard to the tainted evidence, [was] so overwhelming that a conviction

would have followed beyond a reasonable doubt without regard to it." *Commonwealth v. Eisenhart*, 531 Pa. 103, 111, 611 A.2d 681, 685 (1992), *quoting, Commonwealth v. Norris*, 498 Pa. 308, 317, 446 A.2d 246, 250 (1982). However, we are not convinced that the properly admitted evidence of appellant's guilt was so overwhelming that a conviction would have followed beyond a reasonable doubt.

Presently, appellant offered evidence that the accident was caused not by his admitted consumption of two alcoholic beverages, but rather was caused by mechanical problems with the vehicle which made it difficult to steer. Thus, he argued it was the mechanical problems which caused his 1979 Comet automobile to strike the guide-rail and pole which were only inches from the edge of the road. Further, while appellant did fail two field sobriety tests, he did pass one test. Thus, without the .17 % blood alcohol test result, the jury could have concluded that the accident was not a product of alcohol consumption which rendered appellant incapable of safe driving, but rather was a function of the vehicle's mechanical problems. Accordingly, we reverse and remand for a new trial. *Cf., Eisenhart*, 611 A.2d at 685 (where blood test results were improperly admitted in DUI trial, evidence was not so overwhelming to avoid prejudicial effect of test).[3]

*Judgment of sentence reversed. Case remanded for a new trial. Jurisdiction relinquished.*

DEL SOLE, J., concurs in the result.

---

**3.** We comment further to express our displeasure with the lower court's failure to comply with Pa.R.App.P. 1925(a), which, in pertinent part, provides: *"Upon receipt of the notice of appeal the judge who entered the order appealed from,* if the reasons for the order do not already appear of record, shall forthwith file of record at least a brief statement, in the form of an opinion, of the reasons for the order, or for the rulings of other matters complained of, or *shall specify in writing the place in the record where such reasons may be found."* (Emphasis added.)

Herein, the lower court's entire Pa.R.A.P. 1925 opinion reads: "AND NOW, to wit, this 13th day of March, 1996, this Decree is made in accordance with rule 1925(a), of the Pennsylvania Rules of Appellate Procedure and states that the reasons for the decision can be found in the *Trial Transcript of December 8–12, 1995, and the Sentencing Transcript of February 9, 1996,* and filed in this matter at No. 341 C 1995."

Herein, the trial court's opinion by no means gives this court the kind of guidance required by Pa.R.A.P. 1925(a), and the lower court should have at least provided this court with specific references, i.e., page numbers, where his rulings upon these issues were made. This court should not have to expend its limited judicial resources in the act of hunting through voluminous transcripts (which in the present case was one transcript of 247 pages in length) for a lower court's rulings.