J-S57022-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| TIMOTHY JOHN FREY | |
| Appellant | No. 445 MDA 2019 |

Appeal from the Judgment of Sentence October 10, 2018
In the Court of Common Pleas of Lycoming County
Criminal Division at No: CP-41-CR-0000132-2018

BEFORE: BOWES, J., STABILE, J., and MUSMANNO, J.

MEMORANDUM BY STABILE, J.:                    **FILED APRIL 24, 2020**

Appellant, Timothy John Frey, appeals from his judgment of sentence of 35 days to six months' imprisonment for driving under the influence of alcohol ("DUI") and driving under the influence of a high rate of alcohol.[1] Appellant argues that the evidence was insufficient to sustain these convictions, and that the convictions were against the weight of the evidence. We affirm.

The evidence adduced during trial reveals the following. On the evening of November 30, 2017, Appellant met with acquaintances at a cabin to discuss an upcoming hunting trip. N.T., 6/4/18, at 65-67. He arrived at the cabin at about 7:15 p.m. and began consuming beer. *Id.* at 66. At about 7:30 p.m., he had dinner and consumed a second beer. *Id.* at 67. After dinner, he and his acquaintances held a hunting meeting until 10:30 p.m. *Id.* After the

---

[1] 75 Pa.C.S.A. §§ 3802(a)(1) and (b), respectively.

meeting concluded, Appellant remained in the cabin sharing hunting stories, but he eventually left the cabin and drove his Toyota Tundra "down the cabin road, down to Route 14, and then Route Old 15 to Saint Michaels Road." *Id.* at 65, 68. Appellant's car was involved in an accident on Saint Michaels Road.

At approximately 12:16 a.m., Pennsylvania State Police Trooper Daugherty was dispatched to the accident. *Id.* at 5-6. He arrived on the scene at approximately 12:35 a.m. and observed a Toyota Tundra partially on the roadway with noticeable damage and deployed airbags that rendered the vehicle inoperable. *Id.* at 8. There was an unopened can of beer in the cup holder of the vehicle and an odor of alcohol inside the vehicle. *Id.* at 12. The vehicle had struck and partially sheared off a utility pole on the left side of the road. *Id.* at 8-9. The driver of the vehicle was not at the scene. *Id.* at 12.

Trooper Daugherty determined that the crash had occurred recently, because the vehicle's hood was warm to the touch and the weather conditions were cool (thirty-two degrees). *Id.* He walked around the perimeter of the truck and saw no signs of any deer or other animals or braking tracks. *Id.* at 13. There were no adverse road or weather conditions. *Id.* at 5. He ran the vehicle's license plate number and determined it was registered to Appellant. *Id.* at 9. Appellant's address was 1604 Saint Michaels Road, approximately one and a half miles from the crash site. *Id.* at 10.

After placing flares around the vehicle and calling a tow company to recover the vehicle, Trooper Daugherty went to Appellant's address to speak

with him. *Id.* at 13-14. Pennsylvania State Police regulations require troopers to speak to the driver of any vehicle involved in a crash to get the driver's view of the event. *Id.* at 14. Trooper Daugherty also was concerned about Appellant's health, because the vehicle was "in pretty bad shape," and the trooper "wanted to make sure he was okay." *Id.* at 13-14.

Appellant's housemate, Ginere Bartle, answered the door when Trooper Daugherty arrived at Appellant's address. *Id.* at 14, 56-57. Bartle testified that she picked Appellant up while he was walking home, and he did not smell of alcohol at that time. *Id.* at 54-55. Bartle added, however, that when Trooper Daugherty arrived at the house later that night, she went to wake up Appellant and noticed that he "smelled of alcohol" and "he could barely speak he was slurring so badly." *Id.* at 57.

Appellant came to the door to speak with Trooper Daugherty. The trooper observed that Appellant appeared disheveled, sluggish, and sleepy, with a strong odor of alcohol emanating from his person. *Id.* at 15. Appellant admitted to consuming alcoholic beverages and driving and crashing his vehicle. *Id.* at 16. Appellant claimed that the crash occurred at approximately 9:00 in the evening, which was inconsistent with Trooper Daugherty's observation that the vehicle's hood was still warm. *Id.*

Appellant insisted that he was intoxicated because he consumed beer after arriving home. *Id.* at 16-17. Trooper Daugherty allowed Appellant to look for empty cans to validate his story. *Id.* at 39. Appellant searched for

about twenty minutes throughout his residence and in barrels in the back yard, but he could not find any cans. *Id.* at 16-17. There was no other evidence of alcohol consumption in the home. *Id.* at 17-18.

Appellant consented to field sobriety testing, stating he would have no problem successfully completing the tests. *Id.* at 19. Trooper Daugherty took Appellant to the flat surface of his driveway to conduct the tests. *Id.* at 20. Appellant was unsuccessful in completing the walk-and-turn and the one-legged stand tests. *Id.* at 20-23. He swayed back and forth, raised his arms, took an incorrect number of steps, and missed heel-to-toe touches during the walk-and-turn. *Id.* at 21. He raised his arms and had trouble balancing during the one-legged stand. *Id.* at 23.

Trooper Daugherty arrested Appellant for DUI and transported him to the Williamsport Hospital for a blood draw. *Id.* at 24. They arrived at the hospital fifteen to twenty minutes later, at approximately 2:15 a.m. *Id.* at 24, 45. Muncy Borough Patrolman Kenneth Flewelling began processing Appellant at the hospital and observed that he had a strong odor of alcohol and bloodshot, watery and glassy eyes. *Id.* at 48. Throughout processing, Appellant hiccupped, exhibited signs of dry mouth and appeared uneasy in the chair. *Id.* He also exhibited mood swings, a common sign of intoxication. *Id.* at 49.

Patrolman Flewelling read Appellant his Miranda rights, and the DL-26 and implied consent warnings. *Id.* at 46. Appellant refused to sign the DL-

26 form but consented to a blood draw. *Id.* at 47. His blood was drawn at 2:35 a.m., at least three hours and five minutes after the accident, and sent to NMS labs. *Id.* at 27. Trooper Daugherty later received the lab report, which indicated a blood alcohol content ("BAC") of .151%. *Id.*

Appellant was charged with the aforementioned DUI offenses in Counts I and II of the information along with other summary offenses that are not at issue in this appeal. Appellant testified during trial and claimed that he had one beer with dinner early in the evening but did not drink after 8:30 p.m. *Id.* at 66. He admitted having an accident while driving home that night and walking home after the accident. *Id.* at 66, 71. Contrary to what he told Trooper Daugherty at his house, Appellant testified that the accident was at "a little after eleven, eleven thirty." *Id.* at 66. He claimed that the accident occurred because he tried to avoid a deer while negotiating a turn in the road. *Id.* at 68. Trooper Daugherty, however, did not see any skid marks on the road that would have indicated an attempt to avoid an animal in the roadway.

The trial court, sitting without a jury, found Appellant guilty on all counts. On October 16, 2018, the court imposed sentence. Appellant filed timely post-sentence motions challenging the sufficiency and weight of the evidence. The court denied all post-sentence motions, and Appellant filed a timely notice of appeal. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises three issues in this appeal:

I. Was the evidence presented at trial insufficient to sustain the verdict of guilty to count I of the information because the Commonwealth was unable to prove beyond a reasonable doubt that [Appellant] imbibed a sufficient amount of alcohol to render him incapable of safely driving at the time of the accident?

II. Was the evidence presented at trial insufficient to sustain the verdict of guilty to count II of the information because the Commonwealth was unable to prove beyond a reasonable doubt that [Appellant's] BAC exceeded the legal limit within two hours of driving his vehicle because it failed to draw his blood within those two hours and provided no good cause exception for this failure?

III. Was the verdict of guilty to count I and II against the weight of the evidence because [Appellant] and [] Bartle testified credibly while the Commonwealth did not?

Appellant's Brief at 8.

Appellant first argues that the evidence was insufficient to support his conviction in Count I for DUI—general impairment. We determine "whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all the elements of the offense." **Commonwealth v. Cline**, 177 A.3d 922, 925 (Pa. Super. 2017). "This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt." **Commonwealth v. Stokes**, 78 A.3d 644, 649 (Pa. Super. 2013).

Section 3802(a)(1) of the Vehicle Code provides that "an individual may not drive, operate or be in actual physical control of the movement of a vehicle

after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle." 75 Pa.C.S.A. § 3802(a)(1). Under this statute,

> driving is proscribed after the imbibing of sufficient alcohol such that the individual is rendered incapable of safely driving. In contrast to subsections 3802(a)(2), (b), and (c), all of which require that the offender's blood alcohol level reach a certain specified elevation within two hours of driving, there is no time element explicitly delineated in subsection 3802(a)(1). However, to avoid absurd applications of subsection 3802(a)(1), a time element obviously must be inferred . . . [T]he only relevant time period is that span of time during which an individual is incapable of safely driving due to alcohol intoxication.

*Commonwealth v. Segida*, 985 A.2d 871, 879 (Pa. 2009). Section 3802(a)(1) is an "at the time of driving" offense, *i.e.*, an offense requiring proof that the defendant was "driving, operating, or in actual physical control of the movement of a vehicle during the time when he or she was rendered incapable of safely doing so due to the consumption of alcohol." *Id.* The Commonwealth is not required to prove, however, that the defendant did not drink any alcohol after he stopped driving.[2] *Id.* at 879 n.6.

Section 3802(a)(1) permits multiple types of evidence to prove DUI-general impairment, including BAC evidence:

---

[2] *Segida* held that the Commonwealth does not have the burden to prove that the defendant did not drink alcohol after "the accident." *Id.* The Court used this phrase because the defendant in that case, like Appellant herein, was involved in a one-car accident.

The types of evidence that the Commonwealth may proffer in a subsection 3802(a)(1) prosecution include but are not limited to, the following: the offender's actions and behavior, including manner of driving and ability to pass field sobriety tests; demeanor, including toward the investigating officer; physical appearance, particularly bloodshot eyes and other physical signs of intoxication; odor of alcohol, and slurred speech. Blood alcohol level may be added to this list, although it is not necessary and the two hour time limit for measuring blood alcohol level[3] does not apply. Blood alcohol level is admissible in a subsection 3801(a)(1) case only insofar as it is relevant to and probative of the accused's ability to drive safely at the time he or she was driving. The weight to be assigned these various types of evidence presents a question for the fact-finder, who may rely on his or her experience, common sense, and/or expert testimony. Regardless of the type of evidence that the Commonwealth proffers to support its case, the focus of subsection 3802(a)(1) remains on the inability of the individual to drive safely due to consumption of alcohol—not on a particular blood alcohol level.

*Id.* at 879. Notably, BAC evidence is admissible under Section 3802(a)(1) even if the Commonwealth does not relate it back to the time of driving. ***Commonwealth v. Thur***, 906 A.2d 552, 565-66 (Pa. Super. 2006). The amount of time elapsed between driving and BAC testing does not render the test results inadmissible but only affects the weight of the evidence. *Id.*

Construed in the light most favorable to the Commonwealth, the evidence demonstrates beyond a reasonable doubt that Appellant was intoxicated at the time he drove his vehicle home. Numerous facts, viewed together, firmly establish Appellant's guilt, including: (1) Appellant's

---

[3] This two-hour time limit is found in 75 Pa.C.S.A. § 3802(g), which we discuss in greater detail below while examining Appellant's challenge to the sufficiency of the evidence underlying his conviction for DUI-Driving Under the Influence of a High Rate of Alcohol.

admission during trial that he consumed alcohol at dinner that evening; (2) Appellant's admission during trial that he drove his vehicle home that evening but was involved in an accident between 11:00 and 11:30 p.m.; (3) the damage to Appellant's vehicle and utility pole at the accident scene along with deployed airbags that rendered the vehicle inoperable; (4) the odor of alcohol inside the vehicle and the unopened can of beer in the cup holder; (5) the lack of any adverse weather or road conditions at the accident scene; (6) the absence of skid marks on the road that would have indicated an attempt to avoid an animal in the roadway; (7) Appellant's flight from the accident scene to his house one and a half miles away; (8) the trooper's interaction at Appellant's residence with Ginere Bartle, who went to wake up Appellant and noticed that he "smelled of alcohol" and "he could barely speak he was slurring so badly;" (9) Appellant's disheveled, sluggish, and sleepy appearance when he came to the door and his strong odor of alcohol; (10) Appellant's failure to find any empty beer cans to support his claim to the trooper that he consumed alcohol after arriving home; (11) Appellant's inability to perform field sobriety tests successfully despite bragging that they would pose no problem; (12) Patrolman Flewelling's observations at the hospital that Appellant smelled strongly of alcohol, had bloodshot and watery eyes, hiccupped, showed signs of dry mouth, appeared uneasy, and exhibited mood swings; and (13) Appellant's BAC of .151%. *See Commonwealth v. Teems*, 74 A.3d 142, 146 (Pa. Super. 2013) (evidence of guilt sufficient under section 3802(a)(1)

where officer responding to call reporting disabled vehicle observed defendant sitting in driver's seat of vehicle, in lane of traffic, depressing the brakes, car had lost its tires, defendant could not recall if he struck anything or when or where accident might have occurred, officer noticed strong odor of alcohol from defendant, defendant had red, glassy eyes and slurred speech, defendant failed to blow properly into portable alcohol breath test machine, and blood test at hospital revealed that he had BAC of .143%); *Commonwealth v. O'Bryon*, 820 A.2d 1287, 1291-92 (Pa. Super. 2003) (evidence supported defendant's DUI conviction where officer testified that defendant ran her car into parked car and left scene, was confused and staggering, had alcohol on her breath, and could not maintain balance or locate her license and registration); *Commonwealth v. Leighty*, 693 A.2d 1324, 1327 (Pa. Super. 1997) (evidence of glassy and bloodshot eyes, admittance of alcohol consumption, failure of two field sobriety tests and minor accident before arrest sufficient to support conviction under former DUI statute).

Appellant attempts to construe the evidence in the light most favorable to himself instead of to the Commonwealth. He stresses that Trooper Daugherty said only that the hood of the vehicle was warm at the accident scene, not the engine. Common sense dictates, however, that since the hood was warm on a 32-degree evening, the engine underneath the hood was warm as well. Appellant also contends that the Commonwealth failed to rule out the

possibility that he became intoxicated after arriving home. He asserts that his preliminary breath test at his residence was "only" .105%, and his BAC rose to .151% at the hospital because he consumed alcohol after arriving home. As stated above, however, the Commonwealth does not have the duty to prove that Appellant did not drink any alcohol after he stopped driving.[4] *Segida*, 985 A.2d at 879 n.6. Moreover, the Commonwealth disproved Appellant's claim that he consumed alcohol after arriving home with evidence that he could not produce empty beer cans to Trooper Daugherty despite having twenty minutes to search for them. In any event, his preliminary breath test of "only" .105% at his home was itself well above the legal limit of .08%.

In short, the evidence, viewed collectively, supports the verdict of guilt under Section 3802(a)(1). We reject Appellant's challenge to the sufficiency of the evidence on Count I of the information.

In his second argument, Appellant argues that the evidence was insufficient to sustain his conviction in Count II for DUI-Driving Under the Influence of a High Rate of Alcohol under 75 Pa.C.S.A. § 3802(b), because the police failed to draw his blood within two hours after driving, and the Commonwealth failed to show good cause for the delay. We disagree.

Section 3802(b) provides:

---

[4] Again, *Segida* held that the Commonwealth does not have the burden to prove that the defendant did not drink alcohol after "the accident." *Id.*

- 11 -

An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is at least 0.10% but less than 0.16% within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle.

75 Pa.C.S.A. § 3802(b). In a Section 3802(b) prosecution, when the blood test does not take place within two hours after the defendant drives, operates or is in actual physical control of the vehicle, test results are subject to exclusion unless the Commonwealth proves good cause for the delay in obtaining a blood test and the defendant did not imbibe alcohol between his arrest and his blood test.[5] 75 Pa.C.S. § 3802(g).

The record is clear that Appellant did not imbibe any alcohol between the time of his arrest and time of his blood test, since Trooper Daugherty immediately transported him to the hospital following his arrest. Accordingly, we turn to the other question: whether the Commonwealth showed good cause for the more than three-hour delay between Appellant's operation of his vehicle and his blood test.

There are three published cases on the subject of good cause under Section 3802(g) that we examine in chronological order. In the first, we held that good cause for delay over two hours occurred where the DUI suspect fled

---

[5] This is unlike prosecutions under Section 3802(a)(1), which, as discussed above, does not have any two-hour requirement.

the scene of a crash and was not apprehended by police until after significant delay. ***Commonwealth v. Eichler***, 133 A.3d 775, 786 (Pa. Super. 2016).

Second, in ***Commonwealth v. Starry***, 196 A.3d 649 (Pa. Super. 2018), *aff'd*, —A.3d—, 2020 WL 355367 (Pa., Jan. 22, 2020), our Supreme Court expressed "circumspection" about this Court's analysis of good cause. The defendant in ***Starry*** was hospitalized after an automobile accident. Her BAC was .304%, but as much as two hours and forty minutes may have elapsed between the time she stopped driving and her blood test, due in large part to the time it took to transport her to the hospital. She was charged under 75 Pa.C.S.A. § 3802(c), DUI-Highest Rate of Alcohol, which prohibits an individual from driving when her BAC "is 0.16% or higher within two hours after [she] has driven." ***Id.*** Prior to trial, the trial court dismissed this charge on the ground that the Commonwealth failed to establish good cause under Section 3802(g) for delaying the blood test. This Court reversed, reasoning that "the removal of a defendant to a hospital so that she be provided proper treatment constitutes good cause for the delay in obtaining a blood sample within two hours." ***Id.***, 196 A.3d at 661.

The Supreme Court affirmed but for a different reason, *i.e.*, "[Since] there [was] evidence of an extraordinarily elevated blood test result and the time between the expiration of the two-hour window and testing [was] reasonably close," the Commonwealth could proceed to the jury without presenting expert testimony relating the defendant's BAC back to the two-

hour window. *Id.*, 2020 WL at 355367, *6. This holding, the Court observed, "effectively mooted" the Commonwealth's need to prove good cause under Section 3802(g) for the delay of over two hours in obtaining the defendant's blood test. *Id.* at 7. "Nevertheless," the Court continued in *dicta*, "we take the opportunity to express circumspection about the Superior Court's bright-line approach to medical treatment as good cause for extending the two-hour window under Section 3208(g)(1)." *Id.* "In the absence of evidence to the contrary," the Court wrote, "we assume that the necessity for and timing of blood testing during the course of medical treatment will turn on circumstance-dependent judgments by health professionals." *Id.* "In certain cases," such as the case before the Court, it will be reasonable for the officer not to demand a blood test, because it will be reasonable to infer from the defendant's "seriously impaired condition" that "a blood alcohol test for medical purposes would ensue as promptly as possible." *Id.* In other cases, however, "these types of inferences are not warranted," and "a demonstrated effort, on the part of law enforcement officers seeking to pursue *per se* offenses, to meet the two-hour window will be necessary before a determination of good cause for failing to do so should attach, or a creditable explanation as to why such efforts were not practicable must be provided. *Id.* at 8.

Finally, the third, **Commonwealth v. Benvenisti-Zarom**, —A.3d—, 2020 WL 633005 (Pa. Super., Feb. 11, 2020), involves facts similar to **Starry**.

A state trooper investigating a two-car accident observed the defendant, one of the motorists, had a strong odor of alcohol on her breath and was clutching her stomach in pain. The trooper rode with the defendant in an ambulance to a helicopter, which transported her to the hospital. During the ambulance ride, the trooper did not ask the defendant to undergo a blood test because medical personnel were treating her. The defendant underwent a blood test at the hospital two hours and forty minutes after the accident (coincidentally, the same time delay as may have occurred in *Starry*). This Court held that there was good cause not to administer a blood test at the accident scene, because there was too much uncertainty about her medical condition, or during the ambulance ride, because she was receiving medical treatment. *Id.*, 2020 WL 633005, at *6. Although our analysis did not refer to the Supreme Court's decision in *Starry*, it was consistent with *Starry's* dicta that delaying a blood test is reasonable when the defendant first requires medical assessment and treatment.

The lesson we learn from this trio of decisions is that we should measure good cause under Section 3802(g) on a case-by-case basis, balancing the need for prompt blood testing against other factors warranting or causing delay, including but not limited to the defendant's need for immediate medical treatment, the defendant's flight from an accident scene, the time it takes for the police officer to travel to the accident scene or other relevant locations,

and the officer's need to investigate potential criminal activity at the accident scene or elsewhere.

Applying this balancing test to the present case, we detect multiple valid reasons for delay which, added together, furnish good cause for the more than three-hour delay between Appellant's operation of his vehicle and his blood test. To begin, like the defendant in *Eichler*, Appellant fled the accident scene, so Trooper Daugherty had to spend time finding him by running his registration and tracking him down to his house one and a half miles away. Next, since the accident took place in a rural area, there was an understandable delay of at least forty-five minutes in reporting the accident to the police and dispatching Trooper Daugherty to the scene. In addition, there were reasonable delays resulting from travel time in this rural area, such as the nineteen-minute interval between the dispatch to Trooper Daugherty and his arrival at the accident scene, the time it took Trooper Daugherty to drive to Appellant's house, and the time it took Trooper Daugherty to drive Appellant to the hospital. Finally, there were reasonable delays occasioned by Trooper Daugherty's investigation of the physical evidence at the accident scene, his interviews of Bartle and Appellant at Appellant's house, the time Appellant spent attempting to find empty beer cans to bolster his claim of drinking at home, and the time spent administering field sobriety tests to Appellant. Viewed collectively, this array of factors established good cause under Section 3802(g) for delaying Appellant's blood test beyond the two-

hour limit. Accordingly, Appellant's challenge to the sufficiency of the evidence underlying his conviction in Count II for DUI-Driving Under the Influence of a High Rate of Alcohol fails.

In his third and final argument, Appellant claims that his convictions in Counts I and II were against the weight of the evidence. Appellant argues that the trial court failed to credit Bartle's testimony that she picked Appellant up while he was walking home, and that he did not smell of alcohol at that time. This testimony, Appellant contends, demonstrates that he became intoxicated only after arriving home. We disagree.

The law pertaining to weight of the evidence claims is well-settled:

> The weight of the evidence is a matter exclusively for the finder of fact, who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. A new trial is not warranted because of a mere conflict in the testimony and must have a stronger foundation than a reassessment of the credibility of witnesses. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.
>
> On appeal, our purview is extremely limited and is confined to whether the trial court abused its discretion in finding that the jury verdict did not shock its conscience. Thus, appellate review of a weight claim consists of a review of the trial court's exercise of discretion, not a review of the underlying question of whether the verdict is against the weight of the evidence. An appellate court may not reverse a verdict unless it is so contrary to the evidence as to shock one's sense of justice.

*Commonwealth v. Gonzalez*, 109 A.3d 711, 723 (Pa. Super. 2015) (citations and quotation marks omitted).

The trial court stated in its Pa.R.A.P. 1925 opinion that the evidence did not shock its conscience, and that it considered the testimony of all witnesses at trial and believed the Commonwealth's version of events. As fact-finder, the court had the right to believe all, part or none of the evidence and to gauge the credibility of the witnesses. The court chose not to believe Bartle's testimony that Appellant did not smell of alcohol when she picked him up, and it chose to believe the Commonwealth's version of the events. Accordingly, we hold that the trial court acted within its discretion in finding that the verdict did not shock its conscience.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 04/24/2020